UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
KUJTIM DEMIROVIC *et al.*,

                      Plaintiffs,

            -against-

FRANKLIN ORTEGA *et al.*,

                    Defendants.
-------------------------------------------------------- X

**MEMORANDUM AND ORDER**
15 CV 327 (CLP)

**POLLAK**, United States Magistrate Judge:

        This action was commenced on January 21, 2015, by plaintiffs Kujtim Demirovic,

Richard Reinoso, Murto Avdalovic, and Senad Perovic (collectively, "plaintiffs") against

Franklin Ortega, Rocio Uchofen, and P.O. Italianissimo Ristorante Inc. (the "Restaurant" or

"Italianissimo") (collectively, "defendants"), pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL") § 650 et seq.  They

seek to recover unpaid overtime and minimum wages, along with applicable liquidated damages,

under both the FLSA and NYLL, as well as damages for defendants' unlawful withholding of

gratuities, failure to provide wage notices, and retaliation.[1]  On September 21, 2015, the parties

consented to have the case re-assigned to the undersigned for all purposes.  Jury selection is

scheduled to begin on October 16, 2017, with trial to begin the following week on October 23,

2017.

        Currently before the Court are the parties' respective motions *in limine*, along with the

---

[1]In their Answer filed on March 12, 2015, defendants asserted various counterclaims for conversion, fraud, abuse of process, unjust enrichment, defamation, and civil RICO violations, which were dismissed by this Court on September 15, 2016.  On January 31, 2017, this Court also granted the third-party defendants' motion to dismiss the Third Party Complaint.

defendants' motions to amend the proposed joint pretrial order.  The Court's rulings are set forth

below and summarized at the conclusion of this Opinion.


<u>DISCUSSION</u>

**A.  Plaintiffs' Motions *In Limine***

  1.  <u>Plaintiffs' Payment of Taxes</u>

Plaintiffs move to preclude the defendants from presenting evidence or eliciting

information relating to plaintiffs' payment or nonpayment of taxes.  (<u>See</u> Pls.' 7/1717 Mot.,[2]).

Plaintiffs argue that evidence regarding their payment or non-payment of taxes is irrelevant to

the issues raised in this wage and hour case and would be prejudicial.

This issue was previously considered and addressed in connection with defendants'

motion to compel production of plaintiffs' income tax returns.  On May 2, 2017, when

defendants filed their motion to compel, they argued that plaintiffs' tax returns were relevant to

their defense because the tax returns "will reveal how much [plaintiffs] were actually paid and

allow the court and all parties involved to see if the plaintiffs truly did not receive promised

wages." (5/2/17 Ltr. Mot.[3] at 1).  They also argued that the information about whether plaintiffs

paid taxes or not would help explain why there were no records for certain of the plaintiffs who

they alleged had refused to provide the necessary information that would allow defendants to file

W-2 forms during plaintiffs' employment with defendants.

_____

[2] Citations to "Pls.' 7/17/17 Mot." refer to plaintiffs' Motion *In Limine*, dated July 17, 2017, ECF No. 59.

[3] Citations to "Ltr. Mot." refer to defendants' Letter Motion for Discovery of Plaintiffs' Income Tax Returns, filed on May 2, 2017, ECF No. 47.

Plaintiffs opposed the defendants' motion to compel, noting that it was defendants' responsibility to keep the records; defendants did not need the tax identification number to maintain a record of the hours worked and wages paid; and, more importantly, defendants had failed to explain why the total yearly earnings of a particular plaintiff as reflected on his tax returns would be relevant to the question of whether defendants properly paid plaintiffs for the hours they worked for defendants.  (Pls.' 5/3/17 Ltr.[4] at 1-2).

In denying defendants' request, this Court noted that: "A party seeking to compel production of tax returns in civil cases must meet a two-part showing that: '(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not otherwise readily obtainable.'"  Carmody v. Village of Rockville Centre, No. 05 CV 4907, 2007 WL 2042807 at *2 (E.D.N.Y. July 13, 2007) (citing United States v. Bonanno Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)). (See Mem. & Ord.[5] at 4).

 To the extent that defendants continue to seek these records, they argue that "plaintiffs have placed their income at issue by accusing the defendants of unpaid wages."  (Defs.' Mem.[6] at 3 (citing Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)).[7]  However, as this Court

---

[4] Citations to "Pls.' 5/3/17 Ltr." refers to the letter filed by plaintiffs in opposition to the motion to compel, dated May 3, 2017, ECF No. 41.

[5] Citations to "Mem. & Ord." refer to this Court's Memorandum and Order dated May 24, 2017, ECF No. 53.

[6] Citations to "Defs.' Mem." refer to the defendants' Memorandum of Law in Opposition to Plaintiffs' Motion *In Limine*, dated July 24, 2017, ECF No. 64.

[7] Smith v. Bader was a securities case in which the plaintiffs sought rescission based on defendants' alleged breach of fiduciary duty, which they claimed resulted in extreme financial loss.  It is therefore inapposite to the FLSA claims before this Court.  Defendants appear to have realized that the other case from which they selectively quoted in their letter motion to compel,

observed in its earlier order, whether plaintiffs properly reported their income to the government

is irrelevant to the issue at hand, and in any event, it is the defendants' responsibility to maintain

the necessary records to determine if the plaintiffs were paid properly.  See Rosas v. Alice's Tea

Cup, LLC, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015) (citing Rengifo v. Erevos Enterprises, Inc.,

No. 06 CV 4266, 2007 WL 894376, at *2 (S.D.N.Y. Mar. 20, 2007) (holding that "'the corporate

defendants possess relevant data on hours and compensation, and there is no reason to assume

that [the] defendants' records are less reliable than any records maintained by [the plaintiffs].'

Indeed, the plaintiffs' tax returns would only include total income and not details that would be

relevant in an FLSA and NYLL suit, such as weekly wages and specific hours worked") (citation

omitted); D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2012 WL 6138481, at *3

(E.D.N.Y. Dec. 11, 2012) (holding that "the discovery of a plaintiff's tax returns in an FLSA

case is generally not warranted as the information sought is at best only minimally relevant and

can be more readily obtained from a less intrusive source, namely the defendant's own records").

Defendants argue that the W-2s for plaintiffs Demirovic and Avdalovic demonstrate that

from 2009 until 2014, the vast majority of their income was attributable to tips.  (Defs.' Mem. at

3 (observing that Demirovic received 81% of his gross income in tips; Avdalovic received 76%

of his gross income in tips)).  Defendants argue that it is "incomprehensible" that these plaintiffs

would not make any demand for proper wages to the former owner, and would only raise this

---

Uto v. Job Site Servs. Inc., actually issued a protective order preventing discovery of FLSA
plaintiffs' tax returns because they were not relevant and there was no compelling need for their
production. 269 F.R.D. 209, 212 (E.D.N.Y. 2010).  (Ltr. Mot. at 1, ECF No. 47).  The use of such
selective quotations "strays perilously close to the line" drawn by Rule 11 of the Federal Rules of
Civil Procedure.  Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment Ltd., No. 11 CV
726, 2015 WL 13037562, at *12 (E.D.N.Y. Sept. 10, 2015); accord Georgopoulos v. International
Bhd. of Teamsters, 942 F. Supp. 883, 904-05 (S.D.N.Y. 1996).

issue with defendant Ortega after he took over the business and requested the tax identification numbers of Reinoso and Perovic.  (Id.)  Defendants contend that this "suggest[s] a more sinister set of facts"—namely, that with the new owner, "the opportunity for the plaintiffs to loot the restaurant cash register, divert payment of restaurant tabs, maliciously reverse charges, and 'comp' product for friends and family, also came to an end."  (Id. at 4).  Defendants argue that because plaintiffs no longer "had the run of the restaurant," it was no longer profitable for them to remain and thus the requirement that they provide tax identification numbers meant they would have to claim income and pay taxes. (Id.)  Accordingly, defendants assert that compelling the production of their tax returns "will go a long way in proving either their good faith intent or as being malefactors executing an exit strategy at the suggestion of Eljaz Perovic[.]"  (Id.)

Defendants also argue that if plaintiffs cannot produce their tax returns or W-2s[8] from Italianissimo, then plaintiffs' tax returns and W-2s from other places of employment would be relevant to "see the amount of time the plaintiffs worked at other restaurants.  If the plaintiffs spent many hours working at other jobs, it stands to reason they could not spend as much time working for Italianissimo as they have represented." (Id.)  Defendants also argue that the income reported on plaintiffs' tax returns and W-2s would "provide crucial insight into whether the plaintiffs are telling the truth' about the wages they claim are owed to them."  (Id. at 5).  Defendants claim that Ortega was only running the restaurant for a short period of time; plaintiffs were paid in cash at their request; and "record keeping was not a top priority at Italianissimo." (Id.)

---

[8]It is unclear why defendants are now requesting plaintiffs' W-2s from Italianissimo. Presumably, the employer would, if in compliance with the statute, have maintained these records.

Having considered defendants' request, it appears that they are seeking to reopen discovery at this time, weeks before the trial is scheduled to begin and more than four months after discovery closed, in order to compel production of plaintiffs' tax returns and records. Not only is this request untimely, but the Court previously denied the same request, finding that defendants had failed to carry their burden of demonstrating that the returns were relevant. See Demirovic v. Ortega, 2017 WL 2378021, at *3 (E.D.N.Y. May 24, 2017), ECF No. 53. Had defendants moved for reconsideration of the Court's order in a timely fashion, which they did not, the Court would nonetheless have found that even with these new arguments, they have failed to demonstrate relevance.

Indeed, as the Court previously found, plaintiffs' decision to refuse to provide their tax identification numbers to defendants is not a basis on which to require production of plaintiffs' tax returns. Apart from the fact that tax returns are unlikely to show details of hours worked on particular dates, it is the responsibility of the employer, not the employee, to maintain employment records under Section 11(c) of the FLSA. See, e.g., Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)) (explaining that "the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer, who has the duty for their maintenance under section 11(c) of the FLSA"). Clearly, defendants could have maintained their own records of the hours worked and the amounts paid to Reinoso and Perovic even without their tax identification numbers, as they were required to do by statute.

Moreover, defendants state that they have requested the tax returns of Reinoso and Perovic because the income tax information is necessary to determine if plaintiffs acted in bad faith in allegedly refusing to provide their tax identification number to defendant Ortega and

whether they were involved in "executing an exit strategy at the suggestion of Eljaz Perovic, who wanted Mr. Ortega to suffer."  (Ltr. Mot. at 2).  However, apart from the fact that it is unclear how plaintiffs' tax returns would demonstrate either plaintiffs' bad faith or the existence of an "exit strategy," as noted above, the tax returns will only reflect income received and not hours worked by plaintiffs.  Defendants have not advanced a single argument as to what specific information in the tax returns would be relevant to this litigation.

Finally, defendants' request that plaintiffs provide information from other jobs they may have worked is clearly untimely and beyond the deadlines set by the Court.  While the Court expresses no opinion on whether such a request may have been an appropriate inquiry during the course of discovery, the Court denies this request at this time.

The Court therefore finds, once again, that defendants have failed to meet their burden of showing "compelling need" to access plaintiffs' tax returns for the purpose of determining the validity of plaintiffs' FLSA and NYLL claims.[9]

Accordingly, plaintiffs' motion to preclude defendants from mentioning plaintiffs' tax returns at trial is granted.  To the extent that defendants seek to compel production of plaintiffs' tax returns and W-2s, the request is untimely and is denied.

2.  Immigration Status

Plaintiffs also move *in limine* to preclude defendants from mentioning or soliciting information regarding plaintiffs' immigration or citizenship status at trial.  (See Pls.' 7/17/17

---

[9]The Court notes that even if defendants had been able to satisfy the showing necessary to warrant production of tax returns, their request is beyond the time set by this Court for completing discovery, which would provide an independent basis on which to deny their request.

Mot. at 2-5; Lucas Decl.[10] ¶ 1).  In response, defendants contend that "[t]he plaintiffs'

immigration status is of no concern to the defendants." (Defs.' Mem. at 2).

The Court agrees that plaintiffs' immigration status is not relevant to the FLSA claims at

issue in this litigation.  See Fed. R. Evid. 401.  Even if immigration status were relevant, its

prejudicial effect and tendency to mislead the jury would substantially outweigh any probative

value.  See Fed. R. Evid. 403; Rodriguez v. Pie of Port Jefferson Corp., 48 F. Supp. 3d 424, 426

(E.D.N.Y. 2014).  Accordingly, the Court grants plaintiffs' motion to preclude any mention of

their immigration status at trial.

### 3.  Religion or Sexist Views

On September 29, 2017, plaintiffs filed a supplemental *motion in limine*, seeking to

preclude defendants from presenting testimony regarding plaintiffs' religion or their "sexist

views."  (Pls.' Suppl. MIL[11]).  Apparently, Rocio Uchofen, one of the defendants, testified

during her deposition that plaintiffs, who are Muslim, come from a sexist culture and allegedly

used sexist words.

Defendants did not submit a written opposition, but instead filed a sworn declaration

from their attorney, Mr. Behrins.  (See Behrins Decl.).[12]  Counsel appears to acknowledge that

Ms. Uchofen made "remarks concerning headscarves and sexist culture" at her deposition, but he

claims such comments "were prompted by counsel baiting and leading the witness."  (Id.)  He

---

[10]Citations to "Lucas Decl." refer to the Declaration of Scott A. Lucas in Support of Plaintiffs' Motion *In Limine*, dated July 17, 2017, ECF No. 60.

[11] Citations to "Pls.' Suppl. MIL" refer to plaintiffs' Supplemental Motion *In Limine*, dated September 29, 2017, ECF No. 66.

[12] Citations to "Behrins Decl." refer to the Declaration of Jonathan B. Behrins in Opposition to Plaintiffs' Supplemental Motion *In Limine*, Oct. 6, 2017, ECF No. 69.

attaches a brief excerpt from the deposition transcript to his Declaration to support his

contention.  (Id.)  Counsel contends "[t]he testimony regarding Plaintiffs' religion only serves to

potentially explain the reason behind their behavior.  At minimum, this Court must permit

testimony regarding Plaintiffs' allegedly sexist views as their disdain for Ms. Uchofen is

relevant."  (Id. at 2).  The Declaration fails to indicate how this "disdain for Ms. Uchofen" is

relevant and concludes by asserting, upon information and belief, that plaintiff Reinoso is not

Muslim and that Ms. Uchofen was involved in a real estate transaction with plaintiff Demirovic

in her capacity as a real estate agent.  (Id.)  Again, the relevance of these facts, assuming they are

true, is unclear.

That counsel was willing to swear, under penalty of perjury, to the content of his

Declaration does not make it true.  He assumes, without explanation, that the plaintiffs'

supplemental motion referred only to the portions of the deposition transcript he attached.  (See

id. at 1).  He asserts that Ms. Uchofen's testimony regarding the plaintiffs' alleged religious

beliefs and sexist views is relevant, but he offers only a label, devoid of any further explanation

and untethered from any case law that might support defendants' position.  The Declaration also

fails to address plaintiffs' argument that references to their alleged religious beliefs or sexist

views would be more prejudicial than probative.  (Compare Pls.' Suppl. MIL at 1-2 (arguing that

"such testimony has no place in a wage and hour case, and would be[] unfairly prejudicial and

cause a distraction [from] the actual issues in the case, i.e., whether Plaintiffs were lawfully

paid"), with Behrins Decl.).

The Court has reviewed the parties' submissions, including the excerpt from Ms.

Uchofen's deposition, and concludes that references to the plaintiffs' alleged religion or sexist

views are not relevant to the claims or defenses relating to plaintiffs' wages and hours that will

9

be before the jury, see Fed. R. Evid. 401, and are therefore inadmissible.  See Fed. R. Evid. 402.

Even if such references were admissible, their introduction into evidence would result in the

unacceptable risk of unfairly prejudicing the plaintiffs and misleading the jury, which would

outweigh any probative value.  See Fed. R. Evid. 403.

The Court therefore grants plaintiffs' supplemental motion and the parties are therefore

precluded from referencing or eliciting references to the plaintiffs' alleged religion or sexist

views.

## B.  Defendants' Motions *In Limine*

Defendants move *in limine* to limit the damages owed by each defendant, if found liable,

to the period after October 2, 2014.  (See Defs.' MIL).[13]  The majority of the defendants' brief

contends that Mr. Ortega cannot be held liable for damages for any unpaid wages owed during

the period before October 2, 2014, when Ortega acquired 100% of the Restaurant.   Defendants

argue that prior to that time, Mr. Ortega was responsible only for the back of the house --

specifically, the kitchen -- and the front of the house was the responsibility of Eljaz Perovic,

including scheduling and payment of wait staff.  Mr. Ortega claims that since he had nothing to

do with the payroll prior to Perovic leaving the restaurant, he should not be responsible for wage

violations that occurred prior to his assuming full control on October 2, 2014.

In response to defendants' arguments regarding Mr. Ortega, plaintiffs argue that Mr.

Ortega's self-serving claim that he did not know that the wages paid to the wait staff were

improper "is implausible on its face" and refuted by the Declaration of Demirovic who states that

---

[13]  Citations to "Defs.' MIL" refer to defendants' Memorandum of Law in Support of
Defendants' Motion *In Limine*, filed on July 17, 2017, ECF No. 58-1.

Ortega "regularly stole part of our tips and ignored us or became angry with us when we complained about it[.]" (Demirovic Decl.[14] ¶ 2).  Moreover, it is undisputed that prior to October 2, 2014, Ortega was a 50% owner of the restaurant, who then became the 100% owner.  (Defs.' Ans. ¶¶ 62-64).

In order to establish that Ortega is individually liable under the FLSA as an "employer," plaintiffs will be required to establish that Ortega had sufficient control over the employee-plaintiffs.  Four factors considered by the courts are whether he had the power to:  (1) hire and fire employees; (2) supervise and control work schedules and conditions of employment; (3) determine the rate and method of pay; and (4) maintain employment records.  Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (holding that "the overarching concern" for determining whether an individual was an "employer" under the FLSA was whether "the alleged employer possessed the power to control the worker in question").  Plaintiffs also argue that Ortega is liable for unpaid wages prior to his assumption of full ownership based on successor liability.  (See Pls.' Opp'n[15] at 2).

The FLSA does not specifically state whether the liability it imposes attaches to successor employers.  Nonetheless, federal courts regularly apply "the common law successorship doctrine to the FLSA."  2 Ellen C. Kearns et al., The Fair Labor Standards Act 16-51 (3d ed. 2015).[16]  Where a purchaser expressly assumes the liability for unpaid wages, that

---

[14]Citations to "Demirovic Decl." refer to the Declaration of Kujtim Demirovic in Opposition to Defendants' Motion In Limine, dated July 24, 2017, ECF No. 62.

[15]Citations to "Pls.' Opp'n" refer to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion In Limine, filed on July 24, 2017, ECF No. 61.

[16]"The Second Circuit has not delineated what the proper test for successor liability should be in the FLSA context."  Battino v. Cornelia Fifth Ave. LLC, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012).  Some courts in this Circuit have applied the traditional common law test, while others have

assumption provides an additional basis for successor liability.  See, e.g., Monahan v. Emerald Performance Materials LLC, 705 F. Supp. 2d 1206, 1219 (W.D. Wash. 2010) (applying Washington state law in the FLSA context to explain that the "[d]efendant expressly assumed the liabilities of the seller relating to all payroll-related matters . . . . [and] therefore has successor liability regarding plaintiffs' claims in this matter"); Martin Hilti Family Trust v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015) (observing in a non-FLSA context that New York state law allows successor liability "where the buyer expressly assumed the debt at issue").

Although defendants claim that Ortega was fraudulently tricked into assuming liability for these unpaid wages, it is unclear why this would be relevant or admissible given that it is allegedly based of the former owner of the Restaurant, who was Ortega's own partner and is no longer a party in this case.  There is no claim that the plaintiffs were responsible for "tricking" Ortega into purchasing the Restaurant from his partner.

Nonetheless, it remains the plaintiffs' burden to prove that, during the periods for which they seek to impose liability, defendant Ortega qualified as an "employer" within the meaning of the FLSA and NYLL.  It is the province of the jury, not the Court, to find the facts relevant to determining whether and when Ortega was an "employer" within the meaning of the statutes. The parties are, of course, free to move for judgment as a matter of law after trial if that should

---

followed the Ninth Circuit's decision in Steinbach v. Hubbard, 51 F.3d 843 (9th Cir. 1995) and have therefore applied the broader "Substantial Continuity" Test.  See Battino v. Cornelia Fifth Ave. LLC, 861 F. Supp. 2d 392, 400-04 (collecting cases and concluding "that application of the broader 'substantial continuity' standard used in other labor and employment law contexts is appropriate in cases brought under the FLSA").  The Court need not decide which standard applies to decide the instant motions, and therefore expresses no opinion on the issue.

be appropriate under Federal Rule of Civil Procedure 50.  Thus, the Court denies defendants'
motion to limit Ortega's liability as a matter of law to the period after he acquired full control of
the Restaurant.

Although all but seven lines of the defendants' brief relate to limits on Mr. Ortega's
liability, and the closing request for relief also refers only to Mr. Ortega, defense counsel
clarified at the hearing that the motion also, if not primarily, relates to Ms. Uchofen.  (See Tr.
4:15-20).[17] At the hearing, plaintiffs' counsel agreed to stipulate that Ms. Uchofen may only be
held liable, if at all, for violations that occurred between October 2, 2014 through the end of
plaintiffs' employment in December 2014.  (See id. at 5:5-8).

The Court therefore grants defendants' motion *in limine* with respect to defendant
Uchofen to the extent the parties stipulate to limit the period for which she may be liable, but
otherwise denies defendants' motion in all respects.

## C.  Defendants' First Motion to Amend the Joint Pretrial Order

On the evening of October 9, 2017, less than twenty-four hours before the final pretrial
conference, defendants filed a motion to amend the Joint Pretrial Order ("JPTO") in this matter.
(See Defs.' Not. of Mot. to Amend[18]; Defs.' 10/9/17 Mem.[19]).  The parties had previously filed
their proposed JPTO on August 11, 2017.  (See Proposed Joint Pretrial Order, Aug. 11, 2017,

---

[17] Citations to "Tr." refer to the Transcript of the Final Pretrial Conference held on October
10, 2017, ECF No. 74.

[18] Citations to "Defs.' Not. of Mot. to Amend" refer to Defendants' Notice of Motion to
Amend, filed on October 9, 2017, ECF No. 70.

[19] Citations to "Defs.' 10/9/17 Mem." refer to Defendants' Memorandum of Law in
Support of Defendants' Motion Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure,
filed on October 9, 2017, ECF No. 70-1.

ECF No. 65).   In this newly filed motion, the defendants seek to:  (1) add Bruce G. Behrins as

trial counsel; (2) permit the defendants to add three additional witnesses; (3) add certain

affirmative defenses; (4) designate for use in defendants' case in chief any testimony given

during plaintiffs' case in chief; and (5) add exhibits and objections to exhibits proposed by

plaintiffs.  (Defs.' Not. of Mot. to Amend at 1-2).

 In their opposition papers, filed the following morning, plaintiffs object to the

amendment of the JPTO, arguing that the JPTO represents the agreement of the parties and that

the Court should enforce it given the "strong judicial policy in favor of enforcing stipulations."

(Pls.' 10/10/17 Opp'n Mem. [20] at 2 (quoting Hirsch v. Citibank, N.A., No. 12 CV 1124, 2014

WL 2745187, at *19 (S.D.N.Y. June 10, 2014))).

 Each of the defendants' requests will be addressed below.

1. Adding Bruce G. Behrins as Trial Counsel

 Defendants first seek to amend the JPTO to add Bruce G. Behrins, Esq. as trial counsel

for defendants.  (See Defs.' Mem. at 5).  The JPTO currently lists Jonathan Behrins and Jason

Katz as trial counsel for the defendants.   Plaintiffs do not oppose the request.  (See Tr. at 28:10-

13).

 However, it appears from the docket sheet that neither Jason Katz nor Bruce G. Behrins

has filed a notice of appearance in this matter.  The Court therefore grants the defendants'

request to add Bruce G. Behrins as trial counsel in this matter on the condition that he file a

notice of appearance no later than the morning of October 16, 2017.  Mr. Katz is also ordered to

---

[20] Citations to "Pls.' 10/10/17 Opp'n Mem." refers to the plaintiffs' Memorandum of Law
filed in opposition to Defendants' Motion to Amend, filed on October 10, 2017, ECF No. 72.

file a notice of appearance by October 16, 2017 if defendants intend that he appear as trial counsel.

### 2. Addition of Witnesses

The defendants seek to add three witnesses to the JPTO:  Alfonso Sanchez, an employee of defendant Italianissimo; Effie Realmuto, defendants' bookkeeper;[21] and Joseph D'Alleva, defendants' Certified Public Accountant.  (See Defs.' 10/9/17 Mem. at 5-6).  Plaintiffs object to the addition of new witnesses at this late date.  (Pls.' 10/10/17 Opp'n Mem. at 2-7).  They argue that the Court should not allow defendants to add previously undisclosed witnesses on the eve of the trial since defendants have failed to comply with Fed. R. Civ. P. 26 and this Court's previous orders setting deadlines.  (Id.)  Additionally, plaintiffs argue that the four factors set forth in Patterson v. Balsamico militate against permitting defendants to add witnesses.  (Id. at 3 (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006))).

### a. Sanchez

Defendants now seek to call Alfonso Sanchez, a bus boy at the Restaurant.  Defendants admittedly did not list Mr. Sanchez as a witness in the JPTO, nor was he disclosed as a potential witness in defendants' Rule 26 and Rule 16 disclosures.  Defendants contend that he was not previously disclosed as a witness because, when questioned by counsel, he indicated that he was afraid of retaliation and reprisals from the prior owners of the Restaurant.

---

[21] The defendants' moving papers do not identify who Realmuto is and what role she may have played relevant to this litigation.  (See Defs.' 10/9/17 Mem. at 6).  Plaintiffs, however, explain that Realmuto is defendants' bookkeeper.  (See Pls.' Opp'n Mem. at 4).

Plaintiffs nonetheless object, arguing that the allegations are not supported by anything other than counsel's word; the threats cannot be attributed to plaintiffs; and defendants could have compelled Mr. Sanchez's testimony during discovery through the use of a subpoena if he was such an important witness.  Disclosing him now, less than a week before jury selection, is not only well beyond the deadline set by the Court, but also will result in prejudice to the plaintiffs who have had no opportunity to depose Mr. Sanchez and even now have no sense of what he might testify to or why his testimony might be relevant.

At the hearing, the Court advised the defendants that if they wished to pursue this request, they were ordered to submit a declaration from Mr. Sanchez to explain, in his own words, the threats of retaliation he allegedly experienced, when he approached counsel to indicate he was now prepared to testify as a witness, and what caused him to change his mind. The declaration was also to state in detail what the nature of Mr. Sanchez's testimony would be. The Court further ordered counsel to submit a detailed letter explaining why the testimony is relevant and providing authority in support of the request to allow his testimony at this late date.

Late yesterday evening, October 12, 2017, the defendants filed a declaration that purports to be from Mr. Sanchez, though the Court notes that the name signed on the declaration does not match the name provided by the defendants.  (See Sanchez Decl.[22] at 1-2).  In any event, the declaration fails to provide the level of detail requested by the Court.  In the declaration, Mr. Sanchez provides no detail as to the nature of any specific threats relating to his testimony, nor does he indicate that plaintiffs were responsible for threatening him not to testify.  There are no

---

[22] Citations to "Sanchez Decl." refer to the Declaration of Alfonso Sanchez, filed on October 12, 2017, ECF No. 76.

specific dates when these threats were allegedly made, nor has the declaration explained why the witness did not come forward after the plaintiffs and third party defendants ceased working in the Restaurant in December 2014 or after the Court dismissed the Third Party Complaint almost nine months ago.  More important, defendants have failed to supply the requested explanation of relevance and supporting authority as directed by the Court.  Indeed, it appears from the declaration that the witness has very little, if any, relevant testimony to offer relating to the wage payments made to the plaintiffs, who were servers and not bus boys.  The declaration in fact suggests that whenever the plaintiffs divided their tips, the bus boys were sent away and thus, he really does not know how it was done.  (See id.)

Based on a review of the Declaration, it does not appear to the Court that the witness has much in the way of relevant testimony to justify adding him in violation of the Rules and prior scheduling orders.

The Court therefore denies defendants' request to add Mr. Sanchez as a witness.

b. Realmuto and D'Alleva

The defendants argue that plaintiffs have been aware of Realmuto[23] since her name came up during Mr. Ortega's deposition on January 17, 2017.  (Defs.' Mem. at 6).  Defendants contend that plaintiffs will suffer no prejudice if Ms. Realmuto is allowed to testify because the jury is free to credit plaintiffs' testimony.  (See id.)  However, defendants have failed to provide any detail as to what the nature of Ms. Realumuto's testimony might be except to state that her

---

[23] Although defendants refer to Effie Realmuto as she and him in various places in their papers, plaintiffs suggest that Ms. Realmuto is a female.  Thus, the Court refers to her as such in this Order.

testimony will not result in prejudice so long as the plaintiffs do not lie about their involvement with Eljaz Perovic.  (See id.)

As to the Certified Public Accountant, D'Alleva, defendants claim that allowing his testimony will not result in any prejudice to plaintiffs and it would be "a manifest injustice to deny" defendants' motion.  (Defs.' Mem. at 6).  In support of their position, defendants contend that the plaintiffs have known about D'Alleva "for years" and that plaintiffs' counsel has known about D'Alleva "since documents were exchanged in discovery in July 2015."  (Id.)  Defendants also argue, without further explanation, that D'Alleva is "[t]he CPA of record for [d]efendants, and by extension to some or all of [p]laintiffs[.]"  (Id.)

Citing Patterson v. Balsamico, plaintiffs argue that the various factors addressed in Patterson militate in favor of precluding the testimony of Realmuto and D'Alleva.  (See Pls.' Opp'n Mem. at 3-7 (discussing the application of Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006))).

Rule 26 of the Federal Rules of Civil Procedure imposes certain mandatory disclosure requirements, including the requirement that a party disclose the identity of witnesses who may have information relevant to the issues alleged in the Complaint.  Fed. R. Civ. P. 26(a).  Specifically, among the initial disclosures required by the Rule at the very beginning of an action, a party "must, without awaiting a discovery request, provide to other parties:  (A) the name . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment[.]"  Fed. R. Civ. P. 26(a)(1)(A)(i).  A party must also provide "a copy . . . of all documents [and] electronically stored information, . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(ii).

The Rule also imposes a duty to supplement discovery responses if it later becomes known that a response is incorrect or incomplete, unless the information has otherwise been made known to the party during the discovery process or in writing.  See Fed. R. Civ. P. 26(e). The duty to supplement is triggered only where "a party[,] or more frequently [its] lawyer, obtains actual knowledge that a prior response is incorrect [or incomplete]."  Gotlin v. Lederman, No. 04 CV 3736, 2009 WL 2843380, at *3 (E.D.N.Y. Sept. 1, 2009) (quoting Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433 (S.D.N.Y. 2004)).  This duty is a "continuing one," and the "parties must undertake efforts to ensure that discoverable information is not lost or misplaced."  Id.

A party that fails to disclose information pursuant to Rule 26(a) or to supplement its disclosures in a timely manner under Rule 26(e)(1) is not permitted to use such information as evidence, unless there is substantial justification provided for the failure and such failure is harmless.  See Fed. R. Civ. P. 37(c)(1); Triola v. Snow, No. 01 CV 1603, 2006 WL 681203, at *1 (E.D.N.Y. Mar. 15, 2006) (noting that "Rule 37 specifically identifies preclusion as a possible sanction where a party offers no substantial justification for late disclosure").

In considering whether to allow defendants to amend the JPTO at this late date to add new witnesses, the Second Circuit has concluded that the trial court "ought to look to Rule 16(b) for the controlling standard for when a proposed pretrial order may be amended."  Henry v. Department of Transp., 69 F. App'x 478, 481 (2d Cir. 2003).  Rule 16(b) of the Federal Rules of Civil Procedure sets forth the requirements for the court's issuance of scheduling orders and the contents of such an order.  In this case, the Court has held a number of conferences with the parties, and issued several modifications to the initial scheduling order.  Pertinent to this motion, the Court issued an Order on March 29, 2017 directing that all depositions and discovery were to

be completed by May 1, 2017. A subsequent request by defendants to extend the time for discovery was denied and the parties were ordered to file the joint pretrial motion by August 14, 2017.

Not only did defendants fail to list either Realmuto or D'Alleva in their initial Rule 26 disclosures, but they never supplemented their disclosures to add them during the more than two and one-half years during which discovery progressed, nor did they list them in the JPTO which was filed in August 2017 at a time when defendants should have been cognizant of the evidence needed to defend the case.

The Second Circuit's decision in Patterson v. Balsamico is instructive. There the defendant failed to identify four witnesses for trial within the timelines set by Rule 26(a)(3), and instead waited until ten days before the commencement of trial to notify his adversary that he intended to call these individuals as witnesses. 440 F.3d at 117. In affirming the district court's exclusion of these witnesses' testimony under Rule 37(c)(1), the Second Circuit set forth four factors to be considered: "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" Id. (quoting Sofitel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)).

In this case, plaintiffs argue that defendants have not offered any excuse for their failure to disclose Realmuto and D'Alleva in a timely manner, as required by Federal Rule of Civil Procedure 26(a). (Pls.' Opp'n Mem. at 4). Indeed, at the conference, defendants' counsel was unable to articulate circumstances that would justify the failure to disclose these two witnesses until the afternoon before the final pretrial conference, simply offering that he "[d]idn't see the

necessity for them" and conceding they "may not be necessary." (See Tr. 12:4-5). The need to disclose these witnesses was provided by Rule 26 of the Federal Rules of Civil Procedure.

Next, plaintiffs argue that defendants have failed to identify with any detail or precision the subject or subjects of Realmuto's proposed testimony, but instead they rely on mere insinuations. (Id.) Plaintiffs contend that Realmuto's testimony is not important because the plaintiffs have offered to stipulate that defendant Uchofen cannot be held liable for the period before October 2, 2014, and the parties agree that plaintiffs' employment ended on December 6, 2014. (Id. at 4-5) Plaintiffs further argue that any testimony Realmuto may have as to Eljaz Perovic's role would be irrelevant because defendant Ortega expressly assumed liability when he took full ownership of the restaurant. (Id.) With respect to D'Alleva's testimony, plaintiffs correctly observe that "[d]efendants offer no [explanation of] what his proposed testimony concerns, or why it could be seen as important." (Id. at 6). In Patterson, where the defendant failed to demonstrate why the new witnesses had "important" testimony, the court stated: "[u]nder the circumstances, with no explanation to the district court of the importance of the testimony of these witnesses, this factor would not indicate that the district court abused its discretion in excluding the witnesses." Patterson v. Balsamico, 440 F.3d at 117.

Addressing the third Patterson factor, the prejudice suffered by the opposing party, plaintiffs explain that they would be prejudiced by introduction of the newly identified witnesses' testimony because plaintiffs have not had an opportunity to depose the witnesses nor have they sought documents from defendants' proposed witnesses. Apart from the prejudice that would occur if forced to trial without an opportunity to explore their testimony, plaintiffs would likely seek to amend their own Rule 26(a) disclosures to name additional witnesses in response. (Id.)

As to the possibility of a continuance, defendants have not specifically requested a continuance and plaintiffs explain that reopening discovery, which closed long ago, would be disruptive for all involved in this litigation, "and would be grossly unfair because [d]efendants have flouted the procedural rules and deadlines since the inception of this case." (Id. at 6-7). Indeed, defendants have not requested a continuance at this time. See Patterson v. Balsamico, 440 F.3d at 117 (noting that while a continuance might have alleviated the prejudice, the defendant "cannot rely on this possibility when there is no indication in the record that he requested a continuance at the time"). Defendants did request an extension of discovery back in May but there was no discussion whatsoever about the need to add these witnesses to the list of individuals with knowledge of the case who were expected to testify.

Given the independent duty imposed by Rule 26(a), defense counsel's assertion that he "[d]idn't see the necessity" cannot constitute "good cause" to amend the JPTO within the meaning of Rule 16(b). Furthermore, plaintiffs have offered to stipulate to the authenticity of certain documents that these two witnesses might otherwise be called upon to authenticate, thereby reducing any need for their testimony. (See Tr. 12:4-13:5).[24]

The Court therefore denies defendants' motion to amend the JPTO to include Realmuto and D'Alleva, and the defendants are barred from calling them as witnesses at trial.

3. Affirmative Defenses

Defendants seek to add the following defenses to the JPTO: 1) failure to state a cause of

---

[24] At the hearing, the parties appeared to disagree about whether the defendants ever produced certain documents to the plaintiffs. (See Tr. 12:5-24). As the Court noted on the record, the defendants will be precluded from using at trial any documents they failed to produce during the course of discovery. (See Tr. 13:5-9).

action upon which relief may be granted; 2) conversion; 3) fraudulent concealment; 4) abuse of civil process; 5) unjust enrichment; 6) defamation; and 7) RICO violations. (Defs.' Mem. at 7). In essence, the defendants seek to reintroduce as affirmative defenses the counterclaims[25] and third-party claims[26] that were previously dismissed by the Court based on pleading deficiencies. However, to the extent that the plaintiffs' Complaint alleges that they were not paid in accordance with the FLSA and NYLL, none of these "affirmative defenses" that defendants seek to assert would be relevant to these wage and hour claims, nor would these defenses provide a means for avoiding liability. Indeed, defendants have failed to provide any reasoned argument why the defenses they seek to interpose should be construed as affirmative defenses rather than counterclaims. When the Court asked defense counsel to explain what he intended to argue with respect to the proposed defenses, he responded only by offering that "[i]f the Court is not inclined to permit them, then I will withdraw them." (Tr. 14:2-3).

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]" Fed. R. Civ. P. 8(c)(1). Rule 8(c)'s reference to "an avoidance or affirmative defense" embraces two different types of allegations: "those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer." 5 Charles Alan Wright *et al.*, Federal

---

[25] See Memorandum & Order, Sept. 15, 2016, ECF No. 38 (dismissing with prejudice all of the defendants' counterclaims for failure to state a claim and failure to satisfy the pleading requirements of Rules 8 and 9(b), and denying leave to re-plead as futile).

[26] See Memorandum & Order, Jan. 17, 2017, ECF No. 42 (dismissing with prejudice all of the defendants' third party claims for failure to state a claim and failure to meet the pleading requirements of Rule 9(b)).

Practice & Procedure § 1271 (3d ed.).  Under Rule 8(c)(2) of the Federal Rules of Civil

Procedure, "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a

defense, the court must, if justice requires, treat the pleading as though it were correctly

designated, and may impose terms for doing so."  Fed. R. Civ. P. 8(c)(2).

In this case, the proposed affirmative defenses were originally pleaded as Affirmative

Defenses and Counterclaims.  In essence, the counterclaims asserted that plaintiffs had engaged

in certain misconduct while employed at the Restaurant and after they ceased working there.

Specifically, defendants alleged in their conversion and unjust enrichment counterclaims

that plaintiffs and the third-party defendants had cooperated to report lower figures to the

Restaurant's accounts, and then converted the difference to their own benefit and personal use.

(Answer[27] ¶¶ 57-58).  The defendants also asserted that the plaintiffs "stealthily remov[ed] cash

receipts from the cash register and encouraged customers to make their checks payable to cash,

which the plaintiffs then took for themselves.  (Id. ¶¶ 58, 59).  In dismissing these counterclaims

for failure to plead with sufficient particularity in accordance with Rule 9(b), this Court noted

that defendants had failed to identify specific times and locations of the alleged theft, and had not

distinguished among plaintiffs as to what conduct each had been responsible for.  See Luce v.

Edelstein, 802 F.2d 49, 54 (2d Cir. 1986) (holding that any allegations "which fail to specify the

time, place, speaker, and sometimes the content of the alleged misrepresentations, lack the

'particulars' required by Rule 9(b)").  However, even if defendants had been successful in

pleading a claim against plaintiffs for reimbursement of funds that plaintiffs allegedly stole from

---

[27] Citations to "Answer" refer to the defendants' Answer to the Amended Complaint and
Counterclaims, filed on April 6, 2015, ECF No. 14.

the Restaurant, that claim would not be a defense to plaintiffs' allegation that the defendants failed to pay proper wages. While defendants could have taken other actions in response to the theft, such as reporting plaintiffs to the police or terminating plaintiffs' employment had they learned of it prior to the termination of plaintiffs' employment, theft, conversion and unjust enrichment are simply not relevant nor are they defenses to plaintiffs' wage and hours claims.

Similarly, with respect to the defendants' fraudulent concealment counterclaim, the Court dismissed that claim for failure to allege the claim with the requisite specificity required by Rule 9(b). The Court also noted that the defendants' fraudulent concealment claim was so broadly worded as to be unclear what information the plaintiffs had a duty to disclose. At one point, the defendants suggested that the plaintiffs had a duty to disclose to defendant Ortega that they had not been properly compensated and that their outstanding wages were an outstanding debt that he would have to assume if he took over ownership of the Restaurant. Given that defendants presented no authority to support their claim that the employees owed a duty to disclose this information to defendants, the claim was dismissed as implausible.

In asserting a claim for wire fraud in connection with their RICO counterclaim, defendants again failed to allege with sufficient specificity the necessary elements, including the dates and number of phone calls made, the nature of the misrepresentations allegedly made, and the identity of the individual making the calls, lumping together plaintiffs and the third party defendants without distinction. Defendants contended that after they left their employment at the Restaurant, plaintiffs made a number of telephone calls and facsimile transmissions to customers of the Restaurant, that defendants claim caused customers to cancel their reservations. Again, even if the claim had been adequately pleaded, it, like the conversion, unjust enrichment and fraudulent concealment counterclaims, is irrelevant to the wage and hour claims at issue in the

25

upcoming trial.

The abuse of process claim is likewise irrelevant to the wage and hour claims.  The abuse of process claim was dismissed because the defendants failed to establish the collateral objective element of that claim, and also failed to plead the special or actual damages with particularity as required by New York law.  By filing this lawsuit, plaintiffs sought to recover the unpaid wages that are allegedly owed to them by the defendants.  While the lawsuit may be part of a larger "conspiracy with the Perovics to convert more of Italianissimo's profits to the plaintiffs' . . . own use and benefit" (Answer ¶ 90), defendants failed to allege that the lawsuit itself has a collateral objective "outside the legitimate ends of the process," which is to recover unpaid wages. Hoffman v. Town of Southampton, 893 F. Supp. 2d 438, 447-48 (E.D.N.Y. 2012), aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town of Southampton, 523 F. App'x 770 (2d Cir. 2013). Furthermore, "round numbers and general allegations of dollar amounts"—such as the "compensatory damages of no less than $100,000" alleged by the defendants (Answer ¶ 91)— "are insufficient as special damages."  Kanciper v. Lato, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013) (quoting Daniels v. Alvarado, No. 03 CV 5832, 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004)).  Once more, even if defendants had been able to state a claim for abuse of process, it too would be irrelevant to the wage and hour claims at issue in the upcoming trial.

Finally, the defamation claim is equally irrelevant.  The defamation counterclaim was dismissed because the defendants failed to plead the elements of defamation.  They pleaded that plaintiffs "defamed the defendant Uchofen" and damaged her "reputation and character," without providing any details about the allegedly defamatory statements or the pain and distress suffered by Uchofen.  See Neal v. Asta Funding, Inc., No. 13 CV 2176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) (holding that "[m]ere conclusory statements that the claimant was

disparaged by false statements are insufficient to state a defamation claim") (citations and quotations omitted). Even if defendants could establish that Ms. Uchofen was defamed and could recover damages, it would not serve as a defense to the claim that plaintiffs were not paid in accordance with the FLSA and NYLL.[28]

Thus, the Court finds no basis on which to permit an amendment of the JPTO to add these affirmative defenses which were previously dismissed on the pleadings and which, even if properly pleaded and proved, would never be relevant to the wage and hour claims pleaded in the Complaint. The Court therefore denies defendants' request to modify the JPTO to include the affirmative defenses specified in their motion.

Finally, to the extent that defendants now seek to add the proposed affirmative defense of "failure to state a claim," plaintiffs observe that such a defense should not be added to the JPTO because the deadline set by the Court for dispositive motions has long since passed, and the defendants will be able to avail themselves of Rule 50's provision for judgment as a matter of law at the close of plaintiffs' case in chief should plaintiffs fail to establish the requisite elements of any claim. (Id.) The Court agrees and denies defendants' request to add these affirmative defenses to the JPTO.

---

[28] The plaintiffs also oppose the addition of the affirmative defenses on the basis that these proposed affirmative defenses are simply the counterclaims previously dismissed by the Court relabeled as affirmative defenses. (Pls.' Opp'n Mem. at 7). Thus, according to plaintiffs, even if the counterclaims could also serve as affirmative defenses, issue preclusion prevents the defendants from re-litigating those issues in the guise of affirmative defenses because the Court's earlier decision dismissing the counterclaims constitutes a decision on the merits. (See id. at 7-8 (citing Nealy v. Berger, No. 08 CV 1322, 2009 WL 704804, at *10 (S.D.N.Y. Mar. 16, 2009) (explaining that "the doctrine of collateral estoppel applies to final orders, and a dismissal for failure to state a claim under Rule 12(b)(6) is a final order as a decision on the merits"))).

4. <u>Plaintiffs' Retaliation Claims</u>

The plaintiffs have also alleged claims of retaliation based on defendants' filing of these Counterclaims.  The claims allege in essence that after plaintiffs complained about the wage and hour violations at the Restaurant, defendants filed these Counterclaims in retaliation.  Defendants rightly argue that if plaintiffs intend to pursue these retaliation claims, the jury will of necessity learn about the counterclaims[29] (<u>see, e.g.</u>, Am. Compl. ¶¶ 112-26), and defendants should be given an opportunity to put in the factual evidence underlying these counterclaims in order to demonstrate that they were filed in good faith and not in retaliation for the wage and hour claims.[30]

As the Court observed at the hearing, the retaliation claims open the door to defendants' request to, at the very least, present testimony about the basis for each of these claims in order to explain why the defendants brought the counterclaims.  However, to allow such testimony would potentially confuse the jury into considering these claims of alleged wrongdoing by the plaintiffs to offset the plaintiffs' claims for unpaid wages and overtime, spread of hours pay, and wage and notice violations.  As noted, none of this factual information is relevant to plaintiffs' claims

---

[29] To establish a prima facie case that the counterclaims constitute a prohibited act of retaliation by an employer under the FLSA, plaintiffs must prove (1) that the counterclaims were filed with a retaliatory motive and (2) that the counterclaims lack a reasonable basis in fact or law. <u>Flores v. Mamma Lombardis of Holbrook, Inc.</u>, 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013) (citing <u>Torres v. Gristede's Operating Corp.</u>, 628 F. Supp. 2d 447, 466-67 (S.D.N.Y. 2008)).

[30] Once plaintiffs establish their prima facie case, the burden shifts to the defendants to articulate a legitimate, non-retaliatory reason for bringing the counterclaims. <u>Torres v. Gristede's Operating Corp.</u>, 628 F. Supp. 2d at 475-75; <u>see</u> <u>Mullins v. City of New York</u>, 626 F.3d 47, 53 (2d Cir. 2010).  If the defendants meet this burden, the plaintiffs must produce sufficient evidence to support a rational finding that the legitimate, non-retaliatory reasons proffered by the defendants were false, and that retaliation was more likely than not the real reason for filing the counterclaims. <u>See</u> <u>Mullins v. City of New York</u>, 626 F.3d at 53-54 (citing <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000)).

except for the retaliation claim, and balancing the potential prejudice to the plaintiffs with the

benefit to the defendants, it seems clear that the potential to confuse the jury and prejudice the

plaintiffs far outweighs the probative benefit to defendants except as to the retaliation claim.  See

Fed. R. Evid. 403, 404.

The Court has also considered the request for a limiting instruction when this testimony

occurs.  Having considered this option, the Court finds it nearly impossible to craft an instruction

that would be comprehensible and prevent the danger of jury confusion identified above.

Instead, the Court has decided to bifurcate the trial of the plaintiffs' retaliation claim.

### 5. Bifurcating the Claims

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to

avoid prejudice, or to expedite and economize, the court may order a separate trial of one or

more separate issues [or] claims[.]  When ordering a separate trial, the court must preserve any

federal right to a jury trial."  Fed. R. Civ. P. 42(b).  The decision to order a separate trial rests

within the sound discretion of the district court.  See Hopkins v. National R.R. Passenger Corp.,

No. 08 CV 2965, 2016 WL 1588499, at *1 (E.D.N.Y. Apr. 19, 2016) (quoting Getty Petroleum

Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir. 1988)).

In determining whether to order separate trials, courts in this district consider:

(1) whether significant resources would be saved by bifurcating; (2) whether bifurcation will

increase juror comprehension; and (3) whether bifurcation will lead to the repetition of evidence

and witnesses.  McCaffery v. McCaffery, No. 11 CV 703, 2015 WL 1809565, at *1 (E.D.N.Y.

Apr. 21, 2015) (citing WeddingChannel.Com, Inc. v. The Knot, Inc., No. 03 CV 7369, 2004 WL

2984305, at *1 (S.D.N.Y. Dec. 23, 2004)); see also Lewis v. City of New York, 689 F. Supp. 2d

417, 429 (E.D.N.Y. 2010) (explaining that "[o]n a case-by-case basis, courts should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion") (citation omitted).

After hearing argument regarding the problems posed in presenting the retaliation claims with plaintiffs' other claims, the Court has determined that there should be a separate trials before the same jury.  The first trial will address the following claims:  gratuity theft under the NYLL; unpaid minimum wages in violation of the FLSA; unpaid minimum wages in violation of the NYLL; unpaid overtime in violation of the FLSA; unpaid overtime in violation of the NYLL; and failure to provide wage notices in violation of the NYLL (collectively, the "Non-Retaliation Claims").  The second trial will address plaintiffs' claims of unlawful retaliation under the NYLL and FLSA (collectively, the "Retaliation Claims").  Thus, the Retaliation Claims will be tried to the same jury immediately after a verdict is rendered on plaintiffs' Non-Retaliation Claims.  Separate trials of each group of claims will allow the defendants to present evidence that would be inadmissible and highly prejudicial to the plaintiffs if presented in connection with the Non-Retaliation Claims, but which may be proper given the contours of the Retaliation Claims.  See Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) (concluding that the trial court did not abuse its discretion in bifurcating trial where plaintiff sought to introduce evidence in support of bifurcated claims that would be inadmissible as against or prejudicial to individual defendants).

In addition to reducing the risk of prejudice to all parties, conducting a separate trial of the Retaliation Claims will reduce the risk of juror confusion by preventing introduction of evidence regarding retaliation that might distract the jury from their task with respect to the Non-

Retaliation Claims:  determining whether plaintiffs were paid in accordance with the FLSA and NYLL.  Sequencing consideration of the claims in this manner also simplifies the task of instructing the jury.

For the preceding reasons, the Court *sua sponte* orders separate trials in this matter.  The first trial will address the Non-Retaliation Claims.  Immediately after a verdict is rendered in the first trial, the Retaliation Claims will be tried to the same jury.

6.   Adding Defense Exhibits and Objections to Plaintiffs' Exhibits

Defendants also seek to add exhibits to the JPTO and to assert objections to some of the exhibits proposed by the plaintiffs.  (See Defs.' Mem. at 8).  Specifically, defendants assert a general, unspecified objection to introduction of defendants' Amended Answer and Counterclaim.  They also object to introduction of the Court's September 15, 2016 and January 1, 2017 Orders on the basis that they are highly prejudicial to the defendants.  (See id.)  Finally, defendants seek to introduce as an additional exhibit the closing documents in connection with defendant Ortega's purchase of Italianissimo.  (Id.)

Plaintiffs oppose the defendants' addition of objections and exhibits on the basis that the JPTO constitutes an agreement of the parties and that defendants should not be allowed to object to exhibits they previously deemed unobjectionable.  (Pls.' Opp'n Mem. at 9).

At the Final Pretrial Conference, the parties and the Court addressed the merits of defendants' objections.  Plaintiffs argue that the Answer and Counterclaim contain an admission on behalf of defendant Ortega that he assumed liability for salaries and tips when he became 100% owner of Italianissimo.  (Tr. 22:10-14).  Defendants argue that none of the pleadings should be entered as exhibits even if they do contain concessions; instead, defendants "submit

31

[the admissions and concessions] should be stipulated to, rather than the pleading itself going in as an exhibit." (Id. at 23:5-7). As the Court held on the record, the parties shall confer and prepare a stipulation regarding issues admitted or conceded in the pleadings. If the parties submit a stipulation, the pleadings shall not be entered into evidence; if the parties are unable to stipulate, then plaintiffs will be allowed to submit defendants' Amended Answer and Counterclaims as an exhibit in the first trial. Given the Court's decision, supra at 29-30, to hold separate trials in this case, the Court reserves decision on whether the Amended Answer and Counterclaims may be used as an exhibit in the second trial.

As the Court explained on the record, defendants' objection to plaintiffs' proposed Exhibits 2 and 3—the Court's prior orders—is sustained. Although the jury will not be shielded from the knowledge that the defendants' counterclaims and third party claims were dismissed, the Court's orders may not be introduced as exhibits.

Plaintiffs object to the introduction into evidence of the closing documents executed in connection with defendant Ortega's purchase of Italianissimo, including the bill of sale, arguing simply that they were not included in the JPTO as originally filed and the JPTO constitutes a binding agreement between the parties. However, plaintiffs have not otherwise argued against defendants' use of those documents as exhibits at trial. (See Pls.' Opp'n at 9). Unlike the witnesses that were not previously disclosed, these documents were provided to plaintiffs and therefore there is no undue surprise or prejudice. However, at this time, the Court is not prepared to rule on the admissibility of these documents absent a proper foundation and a showing of relevance. The Court therefore grants the defendants' request to amend the JPTO to list as an exhibit any closing documents that were produced to the plaintiffs during the course of discovery, but defers ruling on the admissibility of such documents as an exhibit.

**D.  Plaintiffs' Cross-Motion to Preclude Under Rule 37**

      In addition to their Opposition, the plaintiffs have also filed a cross-motion.  Given that plaintiffs do not seek additional relief beyond what is requested in their Opposition (<u>see</u> Pls.' Mot. Under Fed. R. Civ. P. 37, Oct. 10, 2017, ECF No. 71), the Court has not addressed this cross-motion separately apart from the discussion of defendants' Motion to Amend and plaintiffs' opposition thereto.

<u>CONCLUSION</u>

In summary, after conducting the final pretrial conference and hearing argument from counsel, the Court rules as follows:

- Plaintiffs' Motion *in Limine*, July 17, 2017, ECF No. 59, is granted:  the defendants are precluded at trial from offering evidence regarding, mentioning, or soliciting information concerning plaintiffs' (i) immigration status, (ii) citizenship status, or (iii) payment or non-payment of taxes;

- Plaintiffs' Supplemental Motion *in Limine*, Sept. 27, 2017, ECF No. 66, is granted:  the defendants are barred from presenting testimony regarding the plaintiffs' religion or their alleged sexist views at trial;

- Defendants' Motion *in Limine*, July 17, 2017, ECF No. 58, is granted with respect to defendant Uchofen to the extent the parties stipulate to limit the period for which she may be held liable, but is otherwise denied in all respects;

- Defendants' Motion to Amend the JPTO Pursuant to Fed. R. Civ. P. 16, Oct. 9, 2017, ECF No. 70, is granted in part and denied in part as follows:

  o the Court grants the defendants' request to add Bruce G. Behrins as trial counsel on the condition that he file a notice of appearance no later than the morning of <u>October 16, 2017</u>;

  o the Court orders Jason Katz to file a notice of appearance no later than <u>October 16, 2017</u> if the defendants intend that he appear as trial counsel in this case;

  o the defendants' request to amend the JPTO to list Sanchez, Realmuto, and D'Alleva as witnesses is denied, and defendants are precluded from offering their

testimony at trial;

o   the defendants' request to amend the JPTO to add failure to state a cause of action upon which relief may be granted, conversion, fraudulent concealment, abuse of civil process, unjust enrichment, defamation, and RICO violations as affirmative defenses is denied;

o   the defendants' request to modify the JPTO to include objections to plaintiffs' proposed Exhibit 1 (Amended Answer and Counterclaim), Exhibit 2 (the Court's September 15, 2016 Memorandum and Order), and Exhibit 3 (the Court's January 17, 2017 Memorandum and Order) is granted;

o   the defendants' objections to plaintiffs' proposed Exhibit 1 are conditionally sustained in part and deferred in part:  plaintiffs may use the Amended Answer and Counterclaims as an exhibit in the Non-Retaliation Claims trial only if the parties are unable to stipulate to the issues admitted or conceded in the proposed exhibit, and the Court defers ruling on whether the Amended Answer and Counterclaims may be used as an exhibit in the Retaliation Claims trial;

o   the Court grants defendants' request to amend the JPTO to list as an exhibit the closing documents in connection with defendant Ortega's purchase of Italianissimo, including the bill of sale, to the extent such documents were previously produced in discovery, but the Court defers ruling on the admissibility of the closing documents as an exhibit;

• Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the Court *sua sponte* orders separate trials in this matter:  the first trial will address the Non-Retaliation Claims as defined in this Order, and the Retaliation Claims will be tried to the same jury

immediately after a verdict is rendered in the first trial;

- Plaintiffs' Cross-Motion *in Limine* to Preclude Under Fed. R. Civ. P. 37, Oct. 19, 2017, ECF No. 71, is granted to the extent it is consistent with the Court's rulings in connection with the defendants' Motion to Amend, but is otherwise denied as moot;

- The parties are ordered to file their proposed jury instructions no later than <u>October 17, 2017 at 12:00 p.m.</u>; and,

- Jury selection will begin promptly on **October 16, 2017 at 9:00 a.m.**, and counsel shall arrive no later than 8:45 a.m.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        October 13, 2017

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        United States Magistrate Judge
                                        Eastern District of New York

36