UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
KUJTIM DEMIROVIC *et al.*,

                         Plaintiffs,

               -against-

FRANKLIN ORTEGA *et al.*,

                        Defendants.
----------------------------------------------------------- X

**MEMORANDUM AND ORDER**
15 CV 327 (CLP)

**POLLAK**, United States Magistrate Judge:

This action was commenced on January 21, 2015, by plaintiffs Kujtim Demirovic, Richard Reinoso, Murto Avdalovic, and Senad Perovic (collectively, "plaintiffs") against Franklin Ortega, Rocio Uchofen, and P.O. Italianissimo Ristorante Inc. (the "Restaurant" or "Italianissimo") (collectively, "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL") § 650 et seq. They sought to recover unpaid overtime and minimum wages, along with applicable liquidated damages, under both the FLSA and NYLL, as well as damages for defendants' unlawful withholding of gratuities, failure to provide wage notices, and retaliation.[1] On September 21, 2015, the parties consented to have the case re-assigned to the undersigned for all purposes.

The Court bifurcated the trial of this matter so that wage and hour claims under the FLSA and NYLL were presented in the first trial, while retaliation claims under those same statutes were presented in a second trial. The first trial began on October 23, 2017 and continued until

---

[1] In their Answer filed on March 12, 2015, defendants asserted various counterclaims for conversion, fraud, abuse of process, unjust enrichment, defamation, and civil RICO violations, which were dismissed by this Court on September 15, 2016. On January 31, 2017, this Court also granted the third-party defendants' motion to dismiss the Third Party Complaint.

1

October 25, 2017. On October 26, 2017, the jury returned a verdict against the Restaurant and Ortega, but did not find Uchofen liable as an employer for the unpaid wages. In the second trial, held on the same day, the jury returned a verdict in favor of the plaintiffs against all defendants, including Uchofen.

Now before the Court is plaintiffs' motion for a restraining order under CPLR § 5229. For the reasons discussed below, the Court grants plaintiffs' motion.

## DISCUSSION

**A. The Parties' Positions**

Immediately after the jury rendered its verdict in the second trial, the plaintiffs filed a motion for a restraining order under New York Civil Practice Law and Rules ("CPLR") 5229, as incorporated by Rule 64 of the Federal Rules of Civil Procedure. (Pls.' Mot.,[2] Oct. 26, 2017). In their motion, plaintiffs seek an order enjoining the defendants from "making or suffering any sale, assignment, transfer, or interference with any property in which [defendants have] an interest" until a judgment in this action is entered. (Id. at 1). Plaintiffs also seek an order requiring the defendants to answer post-verdict discovery requests regarding their assets and net worth, and requiring the defendants to appear for depositions once they have responded to that discovery. (See id. at 1-2). Plaintiffs observe that although they "need not make a particular showing of the danger of dissipation of assets," they nonetheless have made such a showing here. (Id. at 4-5 (quoting Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 CV 5565,

---

[2] Citations to "Pls.' Mot." refer to plaintiffs' Request for a Restraining Order dated October 26, 2017, ECF No. 89.

2016 WL 7217641, at *6 (E.D.N.Y. Dec. 13, 2016).  Finally, the plaintiffs specifically contend that "granting the [restraining order] will not impact [d]efendants' ability to meet ordinary payroll expenses or to cover food, mortgage or utility payments and other ordinary living expenses."  (Id. at 5 (citing Gallegos v. Elite Model Management Corp., 1 Misc. 3d 200, 202, 768 N.Y.S.2d 134, 135 (Sup. Ct. 2003)).

      The defendants filed their opposition papers on the evening of October 31, 2017.  (Defs.' Opp'n,[3] Oct. 31, 2017).  The next morning, they filed a supplemental opposition (Defs.' Supp.,[4] Nov. 1, 2017), even though the deadline to file had passed and despite the explicit prohibition against such supplemental briefing in the Court's Individual Rules of Practice.  See Cheryl L. Pollak, Individual Rules of Practice at 3 (providing that "[s]upplemental briefs will not be accepted unless requested by the Court").  In their first set of papers, the defendants argue that there is no basis for a restraining order because the jury did not find that the defendants engaged in criminal or reckless, wanton, or malicious conduct.  (See Defs.' Opp'n at 2).  The defendants further argue that plaintiffs' references to "falsified W-2 journals" are improper given that the jury never found, by a preponderance of the evidence, that the W-2s were falsified.[5]  (Id.)  Finally the defendants argue that if the Court should issue a TRO, it should provide that "the payment of ordinary and usual expenses should be liberal" given that there are two businesses, one of which is owned jointly with Rocio Uchofen, whom the jury did not find liable for unpaid

---

[3] Citations to "Defs.' Opp'n" refer to the defendants' Opposition to Plaintiffs' Request for a Restraining Order filed on October 31, 2017, ECF No. 98.

[4] Citations to "Defs.' Supp." refer to the defendants' Supplemental Opposition to Plaintiffs' Request for a Restraining Order, ECF No. 99).

[5] It should be noted that the Special Verdict Sheets completed by the jury did not ask the jury to make any determination as to whether the W-2s were falsified.

3

wages, but did find liable for retaliation. (Id. at 3).

In their second set of opposition papers, the defendants argue that one of the cases relied on by plaintiffs, Coley v. Vannguard Urban Improvement Ass'n, Inc., is inapplicable for two reasons. (Defs.' Supp. at 1). First, the defendants argue that the court in Coley considered a motion for preliminary injunction only after six co-defendants had defaulted, and thus "the likelihood of success on the merits, irreparable harm to the moving party, balance of the hardships and public interest were significantly different [in Coley] than [in] the case at bar." (Id.) Second, the defendants contend that the Coley decision misquotes CPLR § 5229 by replacing the word "notice" in the statute with the word "order." (Id. at 1-2)[6]. They therefore argue, without citation to any authority, that a "restraining notice, which is issued by a court clerk or attorney . . . is not nearly as powerful in its effect as a restraining order from the court." (Id. at 2). The defendants do not explain how that distinction is relevant to the motion currently pending before the Court.

**B. The Proper Standard**

Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a). CPLR § 5229 "is designed to secure satisfaction of the judgment ultimately to be entered in the action

---

[6] The defendants did not provide specific page references or citations in their brief, which therefore requires the Court to search the Coley opinion to identify language to which the defendants might be referring.

4

. . . . [and] has substantially the same effect as an attachment and seizure of property." Sequa Capital Corp. v. Nave, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996) (citation and alteration omitted). Thus, CPLR § 5229 is a remedy within the meaning of Rule 64. Id.; accord Coley v. Vannguard Urban Improvement Ass'n, Inc., 2016 WL 7217641, at *6.

CPLR § 5229 provides that

> In any court, before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment.

Id. It thus provides both for discovery relating to the party against whom a decision or verdict has been rendered and for an order of restraint against the adverse party. See id.; Richard C. Reilly, Practice Commentaries: N.Y. CPLR C5229:1 (McKinney's 2017) (explaining that, unlike provisions that apply after judgment, CPLR § 5229 is "available only against 'the adverse party' [and] not . . . against third persons, such as garnishees and transferees").

"Other than having received a favorable verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR [§] 5229." Sequa Capital Corp. v. Nave, 921 F. Supp. at 1076; accord Gallegos v. Elite Model Management Corp., 1 Misc. 3d 200, 202, 768 N.Y.S.2d 134, 135, (Sup. Ct. 2003) (explaining that "[t]he only statutory requirement is that the application for 5229 relief be made by the prevailing party"). The purpose of CPLR § 5229 is "to prevent an adverse party from disposing of assets in order to avoid judgment." Gallegos v. Elite Model Management Corp., 768 N.Y.S.2d at 135.

Defendants argue that a different standard applies and that the Court must consider that this case differs from Coley with respect to "the likelihood of success on the merits, irreparable harm to the moving party, balance of the hardships and [the] public interest." (Defs.' Supp. at 1).

5

Those factors are relevant to the Court's decision whether to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, and it is for that reason they were discussed in Coley. See Coley v. Vannguard Urban Improvement Ass'n, Inc., 2016 WL 7217641, at *2. The defendants fail to observe that the Coley court concluded it could not issue a preliminary injunction under Rule 65 because such relief was precluded by the Supreme Court's decision in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). See Coley v. Vannguard Urban Improvement Ass'n, Inc., 2016 WL 7217641, at *5 (declining to issue preliminary injunction under Rule 65); cf. id. at *6 (ordering the defendants' assets restrained and requiring defendants to appear for deposition and to produce documents under CPLR § 5229 and Rule 64). Thus, the Rule 65 analysis in Coley upon which the defendants rely is inapplicable to this case.

The Coley plaintiffs also sought relief under Rule 64 and CPLR § 5229 in the form of a restraining order, which the court considered in an entirely separate section of the opinion. See id. at *6. It is that section this Court has referenced and which is relevant to the issue at hand.

**C. Application to this Case**

It is beyond dispute that the plaintiffs have received a favorable verdict or decision against each of the defendants.[7] (See, e.g., Jury Verdict, Oct. 26, 2017, ECF No. 92). Thus, the

---

[7] The jury found that Ms. Uchofen, as well as the Restaurant and Mr. Ortega, unlawfully retaliated against the plaintiffs. (See Jury Verdict, Oct. 26, 2017, ECF No. 93). Although the jury awarded nominal damages in the amount of $1.00, New York law requires courts to award liquidated damages to each aggrieved employee in an amount not to exceed $20,000.00. See NYLL § 215(2)(a). Thus, there is the potential that Ms. Uchofen's liability might amount to tens of thousands of dollars, even absent consideration of any liability she might face for attorneys' fees and costs.

plaintiffs have made the showing required before the Court may consider if relief is appropriate under CPLR § 5229.  See Sequa Capital Corp. v. Nave, 921 F. Supp. at 1076.

Under CPLR § 5229, the decision whether to grant relief, and under what circumstances, rests within the sound discretion of the Court.  See Sequa Capital Corp. v. Nave, 921 F. Supp. at 1076.  "The court must exercise its discretion in light of the object of [the statute to] prevent the party against whom a verdict or decision has been rendered from secreting or conveying his property to avoid payment of the judgment."  Weinstein, Korn & Miller, New York Civil Practice:  CPLR ¶ 5229.02 (David L. Ferstendig ed., 2d ed.).  Courts have considered various factors in guiding their exercise of discretion, two of which are particularly salient here.

First, the court may consider whether there are any inconsistencies or misrepresentations by the party against whom relief is sought, which may properly "le[a]d the court to believe the danger exists that defendants may dispose or divert assets to avoid a potential judgment."  See Gallegos v. Elite Model Management Corp., 768 N.Y.S.2d at 136.  The Court observed all four days of the trials in this matter and observed numerous inconsistencies and misrepresentations in the evidence and testimony presented by the defendants.

To provide just one example, the defendants introduced documents they claimed to be W-2s and the weekly transaction journals on which the W-2s were based, which defendants claimed to have received from their accountant.  According to those documents, the plaintiffs received the exact same amount in wages and tips every single week for years on end.  If the documents are to be believed, the plaintiffs continued to receive such payments, in the precise same amounts, even when the restaurant was closed due to Hurricane Sandy.  When asked how it could be that the plaintiffs were receiving tips from customers when the restaurant was not even open, the defendants replied simply that the plaintiffs were paid wages and tips.  Defendants

correctly observe that the jury concluded the defendants had a good faith basis on which to believe their failure to pay wages was in accordance with law. (See Defs.' Opp'n at 2-3). However, that does not mean, as defendants argue, that the jury concluded the W-2 forms were not fabricated. In fact, contrary to the defendants' documents indicating the amount of "wages" plaintiffs purportedly received, the jury found that the Restaurant and Mr. Ortega never paid the plaintiffs any wages whatsoever. (See Verdict Form, Oct. 26, 2017, ECF No. 92). It follows that, rather than agreeing with the "presumption of regularity" argued by the defendants, the jury necessarily rejected the accuracy of the W-2s.

The various inconsistencies and misrepresentations the Court observed during trial, weigh in favor of issuing a restraining order.

Second, "[t]hat an adverse party is in financial distress may be an issue for the court to consider in assessing the utility of CPLR 5229." Id. at 138 (citing Unex Ltd. v. Arsygrain Int'l Corp., 102 Misc. 2d 810, 813, 424 N.Y.S.2d 583, 585 (Sup. Ct. 1979)). Here, the defendants repeatedly testified to their dire financial straits at both the first and second trials. Mr. Ortega testified extensively about the Restaurant's lack of financial success in explaining the circumstances behind his purchase of the remaining 50% portion of the Restaurant. Although the defendants cite the need to pay the expenses of two businesses and a family of five as a reason relief should not be granted (see Defs.' Opp'n at 3), such concerns actually underscore the potential that the defendants may not maintain funds sufficient to satisfy the judgment.

To the extent the defendants claim they will be unable to support themselves or continue in their businesses, the statutes governing the effect of a restraining notice or restraining order explicitly prevent such a result by exempting broad categories of personal property, including certain portions of the adverse party's income, from restraint. See, e.g., N.Y. CPLR § 5205(a),

(d). Thus, an order under CPLR § 5229 would allow the defendants to support themselves and to carry on in their businesses, but would also protect the plaintiffs' interest by preventing the defendants from transferring funds or assets to avoid paying on the judgment.  See Sequa Capital Corp. v. Nave, 921 F. Supp. at 1076 (explaining that a defendant's "concern that [a] restraining order will leave him without means to live is unfounded" in light of the limitations and exceptions provided under New York law).  Of course, if there should arise a legitimate need for the defendants to transfer ownership or otherwise dispose of money or assets that exceed the statutory limits, the defendants are entitled under the statute to seek the Court's permission to do so.  See CPLR § 5222(b) (providing that a party subject to a restraining notice or order is prohibited from transferring or otherwise disposing of property "except upon direction of the sheriff or pursuant to an order of the court").

Finally, the Court considers directly "whether there is a danger that [the adverse party] will dispose of his assets."  Sequa Capital Corp. v. Nave, 921 F. Supp. at 1076 (citing Kaminsky v. Kahn, 46 Misc. 2d 131-32, 258 N.Y.S.2d 1000, 1001 (Sup. Ct. 1965)).  At trial, the defendants testified to the ways in which Rocio Uchofen provided money so that her husband could acquire the Restaurant, but claimed that she did not own the Restaurant during the period at issue.  In their opposition papers, the defendants ask the Court to allow liberal spending in part because Mr. Ortega owns two businesses, and because Ms. Uchofen is the co-owner of one of those businesses.  (Defs.' Opp'n at 3).  Ms. Uchofen's co-ownership with her husband of another unspecified business raises the possibility that Mr. Ortega and the Restaurant will seek to avoid judgment by transferring assets to or through Ms. Uchofen and the co-owned business.  Detecting such transfers after the fact could be difficult, and might be made even more challenging in light of the defendants' own testimony that they have difficulties maintaining

accurate financial records relating to their business.

      Having reviewed the parties' submissions and considered the testimony and evidence presented over the course of the four-day trial, the Court concludes that it is appropriate to issue an order under Rule 64 and CPLR § 5229, restraining P.O. Italianissimo Ristorante, Inc., Franklin Ortega, and Rocio Uchofen from making or suffering any sale, assignment, transfer, or interference with any property in which any of them has any interest, except as allowed by CPLR § 5222, another applicable provision of New York law, or further order of this Court. The Court further Orders the Restaurant, Mr. Ortega, and Ms. Uchofen to respond to discovery requests regarding their finances.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for a restraining order is granted. The Court orders the assets of P.O. Italianissimo Ristorante, Inc., Franklin Ortega, and Rocio Uchofen RESTRAINED pursuant to CPLR § 5229.

P.O. Italianissimo Ristorante, Inc., Franklin Ortega, and Rocio Uchofen are ENJOINED and restrained, with the same effect as if a restraining notice had been served upon them after judgment, from making or suffering any sale, assignment, transfer, or interference with any property in which any of them has any interest, except as allowed by CPLR § 5222, another applicable provision of New York law, or further order of this Court. These restrictions shall apply until such time as final judgment in this action has been entered.

The Court also orders P.O. Italianissimo Ristorante, Inc., Franklin Ortega, and Rocio Uchofen to respond separately to the "Post-Verdict Interrogatories and Request for Documents Used to Calculate Net Worth," attached as Exhibit A to the plaintiffs' motion, no later than November 27, 2017, and thereafter to appear for deposition as provided by CPLR § 5229 at a time to be agreed upon by all of the parties.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
November 3, 2017

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

11