UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KUJTIM DEMIROVIC *et al.*,

              Plaintiffs,

      -against-

FRANKLIN ORTEGA *et al.*,

              Defendants.
-----------------------------------------------------------X

<u>**MEMORANDUM AND ORDER**</u>
15 CV 327 (CLP)

**POLLAK**, United States Magistrate Judge:

       This action was commenced on January 21, 2015, by plaintiffs Kujtim Demirovic,

Richard Reinoso, Murto Avdalovic, and Senad Perovic (collectively, "plaintiffs") against

Franklin Ortega, Rocio Uchofen, and P.O. Italianissimo Ristorante Inc. (the "Restaurant")

(collectively, "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201 <u>et</u> <u>seq.</u>, and New York Labor Law ("NYLL") § 650 <u>et</u> <u>seq.</u>  Plaintiffs sought to recover

unpaid overtime, minimum wages, and spread-of-hours pay, along with applicable liquidated

damages, under both the FLSA and NYLL, as well as damages for defendants' failure to provide

wage notices and retaliation.[1]  On September 21, 2015, the parties consented to have the case

reassigned to the undersigned for all purposes.

       The Court bifurcated the trial of this matter so that the wage and hour claims under the

FLSA and NYLL were presented in the first phase of the trial, while the retaliation claims under

those same statutes were presented in a second phase.  The first phase of the trial began on

---

[1]In their Answer filed on March 12, 2015, defendants asserted various counterclaims for
conversion, fraud, abuse of process, unjust enrichment, defamation, and civil RICO violations,
which were dismissed by this Court on September 15, 2016.  On January 31, 2017, this Court
also granted the third-party defendants' motion to dismiss the Third Party Complaint.

October 23, 2017 and continued until October 25, 2017.  On October 26, 2017, the jury returned a verdict in favor of the plaintiffs and against the Restaurant and defendant Ortega.  The jury, however, found that defendant Uchofen was not an "employer" under the FLSA or NYLL and therefore was not liable for the unpaid wages.  In the second phase of the trial, held on October 26, 2017, the same jury returned a verdict in favor of the plaintiffs against all defendants, including Uchofen, on plaintiffs' claims of retaliation.

The jury returned its verdicts in the form of special verdicts under Rule 49(a) of the Federal Rules of Civil Procedure.  The Court has calculated damages based on the jury's verdicts as set forth below.  The Court also grants plaintiffs' motion for liquidated damages on the retaliation claims under Section 215 of the New York Labor Law and plaintiffs' motion for attorney's fees and costs.

DISCUSSION

A.  Damages Based on the Jury Verdict in Phase One—the Wage Claims Trial

The Court submitted special verdict forms that asked the jury to make written findings with respect to specific issues of fact.  See Fed. R. Civ. P. 49(a), (b); see also Cash v. County of Erie, 654 F.3d 324, 343 (2d Cir. 2011) (setting forth the framework for interpreting general and special verdicts).  In entering judgment based on the jury's responses to the questions, the Court is mindful of its duty "to attempt to harmonize the answers, if it is possible under a fair reading of them" and "to reconcile the jury's findings, by exegesis if necessary[.]"  Gallic v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119 (1963).

1. Defendants' Liability

The jury found that, in addition to the Restaurant, Franklin Ortega was plaintiffs'
employer within the meaning of the FLSA and the NYLL for the period from January 21, 2009
through December 6, 2014.  See Murphy v. Healthshare Human Servs. of N.Y., 254 F. Supp. 3d
392, 404 (E.D.N.Y. 2017) (explaining that "[c]ourts apply the same horizontal joint employment
test under federal and New York labor law").  (See Verdict Sheet I[2] at 80).  The jury also
determined that Rocio Uchofen was not plaintiffs' employer at any time relevant to this
litigation.  (See id. at 81).  Thus, defendants P.O. Italianissimo Ristorante, Inc. and Franklin
Ortega are jointly and severally liable as employers for the damages on plaintiffs' wage claims,
but defendant Rocio Uchofen is not liable as an employer for such.  See N.Y. Lab. Law § 651(6);
Drozd v. Vlaval Constr., Inc., No. 09 CV 5122, 2011 WL 9192036, at *5-7 (E.D.N.Y. Oct. 18,
2011), adopted, 2012 WL 4815639 (Oct. 10, 2012).

2. The Wage Claims:  Legal Standards

a. Minimum Wage Claims

As indicated on the verdict form, the jury found that the Restaurant and defendant Ortega
had failed to pay each of the plaintiffs proper minimum wages in violation of the FLSA and
NYLL.  An employer who fails to meet minimum wage obligations under the FLSA and the
NYLL "shall be liable to the employee or employees affected in the amount of their unpaid
minimum wages . . . and in an additional equal amount as liquidated damages."  29 U.S.C.
§ 216(b); see N.Y. Lab. Law § 663(1).  Here, the plaintiffs claimed and the jury found that, other

---

[2] Citations to "Verdict Sheet I" refer to the first Verdict Sheet completed by the jury with
respect to plaintiffs' wage claims in the first phase of the trial, dated October 26, 2017, ECF No.
92.

than tips and gratuities, plaintiffs were not paid any wages for their services.[3] (See Verdict Sheet I at 2, 23, 43, 64). Thus, based on the jury's findings, plaintiffs were owed minimum wages for every hour worked during the relevant employment period.

In determining the wages owed based on the hours the jury found that each plaintiff had worked, the Court considered the applicable minimum wage rates in effect under the FLSA and NYLL during each plaintiff's period of employment. Both statutes specify that, where the other prescribes a higher minimum wage rate, the statute containing the higher wage rate shall control. See 29 U.S.C. § 218(a); N.Y. Lab. Law § 652(1) (McKinney 2016). In this case, the wage rates provided by the NYLL were higher throughout plaintiffs' employment; therefore, the Court uses the rates prescribed under the NYLL as the applicable minimum wage rate for each relevant period.

Thus, in calculating the wages owed to each plaintiff, the Court has used the following minimum wage rates prescribed by the NYLL for each of the relevant time periods as follows: (1) $7.15 per hour from January 21, 2009 to July 23, 2009; (2) $7.25 per hour for the period from July 24, 2009 to December 30, 2013; and (3) $8.00 an hour for the period from December 31,

---

[3] Since defendants failed to comply with the tip credit requirements under the NYLL and FLSA, defendants were not authorized to deduct the amounts received by the plaintiffs in tips and gratuities when calculating the amounts of wages owed. See, e.g., 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)(explaining that "an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of [29 U.S.C. § 3(m)]" and that "[i]n order for the employer to claim the maximum tip credit, the employer must demonstrate that the employee received at least that amount in actual tips"); N.Y. C.C.R.R. § 146-1.3 (providing that an employer may take a tip credit if the employee "receives enough tips and if the employee has been notified of the tip credit as required"); Camara v. Kenner, No. 16 CV 7078, 2018 WL 1596195, at *11 (S.D.N.Y. Mar. 29, 2018) (summarizing the requirements under the NYLL and FLSA). (See n.4 infra).

2013 to the end of plaintiffs' employment.  See N.Y. Lab. L. § 652(1); 12 N.Y. C.C.R.R. § 137-1.2(e) (2009).[4]

b. Overtime Claims

Under both the FLSA and NYLL, an employee is entitled to overtime pay, calculated at one and one-half times the employee's regular hourly rate, for hours worked in excess of 40 in one work week.  See 29 U.S.C. § 207(a)(2)(C); N.Y. Lab. Law § 663(3); 12 N.Y. C.C.R.R. § 146-1.4.  The jury found that three of the plaintiffs, Demerovic, Reinoso, and Perovic, worked more than 40 hours per week and thus were entitled to receive unpaid overtime wages for the hours worked over 40 in a week.[5]  The method for calculating overtime under both the FLSA and NYLL is the same.  Even if the plaintiffs are owed overtime wages in violation of both the FLSA and the NYLL, they are not entitled to recover double damages.  See Janus v. Regalis Constr., Inc., No. 11 CV 5788, 2012 WL 3878113, at *7 (E.D.N.Y. July 23, 2012), adopted, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

The FLSA provides that overtime pay should be calculated based on the employee's

---

[4] Defendants argue that although the jury was charged on the regular minimum wage rate, each plaintiff testified that he worked as a server and thus "equity dictates that the servers' minimum wage should apply."  (11/2/2017 Behrins Decl. at 1, ECF No. 103).  The defendants waived any such argument by failing to object to the jury instructions that contained the standard minimum wage and by failing to request an instruction as to the tip credit.  See, e.g., Fed. R. Civ. P. 51(c); Cash v. County of Erie, 654 F.3d at 340 (explaining that failure to object on the record as required under Rule 51(c) results in waiver).  Even if the argument had not been waived, the defendants cite no authority in support of their position, nor could they:  the tip credit is an affirmative defense that the defendants did not raise, on which the jury was not instructed, and as to which the defendants adduced no evidence.  See, e.g., Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *22 n.12 (E.D.N.Y. Sept. 22, 2017) (explaining that the tip credit is an affirmative defense upon which the defendants bear the burden of proof).

[5] Plaintiff Avdalovic did not allege a claim for unpaid overtime (see Am. Compl. ¶¶ 62-63, 141, Mar. 23, 2015, ECF No. 10), and the portions of the verdict sheet pertaining to him did not ask the jury to make findings with respect to overtime.  (See Verdict Sheet I at 23-41).

regular rate of pay or the minimum wage, whichever is greater.  See 29 U.S.C. § 207; 29 C.F.R. § 778.107.  New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA.  12 N.Y. C.C.R.R. § 142-2.2.

Under the Code of Federal Regulations, when state law provides for a higher minimum wage than that set by the FLSA, the higher rate applies not only for purposes of determining minimum wages but also for calculating overtime rates.  29 C.F.R. § 778.5; see Santana v. Latino Express Restaurants, Inc., No. 15 CV 4934, 2016 WL 4059250, at *4 (S.D.N.Y. July 28, 2016) (calculating overtime wages due to plaintiff under both the FLSA and NYLL by using the state minimum wage rate); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 126 (E.D.N.Y. 2011) (explaining that "[u]npaid overtime wages are calculated by multiplying the New York minimum wage rate or the FLSA minimum wage rate, whichever is higher, by 0.5 to determine the additional amount owed per hour over 40 hours worked").

Thus, using the NYLL's minimum wage rates in effect at the time of plaintiffs' employment, the Court has calculated the proper overtime rates as follows:  (1) $10.725 per hour from January 21, 2009 to July 23, 2009; (2) $10.875 per hour for the period from July 24, 2009 to December 30, 2013; and (3) $12.00 an hour for the period from December 31, 2013 to the end of plaintiffs' employment

c. Spread of Hours Pay Claims

The jury also found that plaintiffs were entitled to receive spread-of-hours pay under the NYLL.  Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  12 N.Y.

C.C.R.R. § 146-1.6(a).  That compensation is calculated at the applicable minimum wage "regardless of a given employee's regular rate of pay."  Id. § 146-1.6(d).

3.  The Amounts Owed to Each Plaintiff

a. Kujtim Demirovic

The jury found that plaintiff Demirovic was never paid wages for the hours he worked at the Restaurant; he was only compensated through tips or other gratuities.  (See Verdict Sheet I at 2).  The jury also found that Mr. Demirovic never received overtime wages for any hours over 40 that he worked in a given week and he did not receive spread-of-hours pay on days when he worked more than ten hours in one day.  (See id. at 2-3, 5-21).  The jury further determined that from January 21, 2009 to December 31, 2011, Mr. Demirovic worked 55 hours per week and that he worked more than 10 hours in a day on five days each week.  (Id. at 5-13).  The jury found that from January 1, 2012 through April 12, 2014, Mr. Demirovic worked 40 hours per week and worked more than ten hours a day for two days per week.  (Id. at 13-19).  For the period from April 13, 2014 through May 3, 2014, the jury found that Mr. Demirovic worked 40 hours per week and worked more than ten hours a day for four days each week.  (Id. at 20).  Finally, the jury found that from May 4, 2014 through December 6, 2014, Mr. Demirovic worked 29 hours per week and worked more than ten hours a day for two days each week.  (Id. at 20-21).

The verdict sheet directed the jury to determine the number of days each employee normally would have worked but did not work due to vacation days, sick days, inclement weather, and other days off.  (See id. at 3).  The jury was instructed not to deduct those days off from their responses regarding the number of hours worked per week because "[t]he Court will account for days off and other time listed in [the jury's] answer[.]"  (Id. at 4).  The jury found that Mr. Demirovic did not work on 15 days in 2009, 19 days in 2010 (including 15 days for

Hurricane Irene), 5 days in 2011, 20 days in 2012 (including 15 days for Hurricane Sandy), 5 days in 2013, and 5 days in 2014. (Id. at 3).

To calculate damages based on the jury's verdict, the Court first subtracted the days the jury found that Mr. Demirovic did not work from the total number of days that the jury found he had worked. Then, after applying the applicable minimum and overtime wage rates to the jury's determination of the number of hours Mr. Demirovic worked, the Court calculated that Mr. Demirovic is entitled to wages in the total amount of $114,991.75. That award consists of $83,589.75 in regular wages, $23,755.50 in overtime wages, and $7,646.50 in spread-of-hours wages.[6]

    b. Murto Avdalovic

The jury found that plaintiff Avdalovic was never paid wages for the hours he worked at the Restaurant; like Mr. Demirovic, he only received tips or other gratuities. (See Verdict Sheet I at 23). The jury also found that Mr. Avdalovic did not receive spread-of-hours pay on days when he worked more than ten hours in one day. (See id. at 23, 25-41). The jury further determined that from January 21, 2009 through December 6, 2014, Mr. Avdalovic worked 29 hours per week and that he worked more than 10 hours in a day once each week. (Id. at 25-41). Mr. Avdalovic did not bring a claim for overtime.

The verdict sheet directed the jury to determine the number of days Mr. Avdalovic normally would have worked but did not work due to vacation days, sick days, inclement

_____

[6] Where the jury did not indicate specific weeks in which each plaintiff took time off, the Court deducted the time off from the last full week in a given year. See Fed. R. Civ. P. 49(a)(3) (explaining that if a party does not demand submission of an issue to the jury, then the party waives the right to jury trial on that issue and "the court may make a finding on the issue"). The Court's detailed calculations are appended as exhibits to this Opinion. (See nn.13-16, infra).

weather, and other days off.  (See id. at 24).  The jury was instructed not to deduct those days off from their responses regarding the number of hours worked per week because "[t]he Court will account for days off and other time listed in [the jury's] answer[.]"  (Id. at 24).  The jury found that Mr. Demirovic took 2 days off in 2009, 2 days in 2010, 2 days in 2011, 8 days in 2012, 2 days in 2013, and 2 days in 2014.  (Id.)

To calculate damages based on the jury's verdict, the Court first subtracted the days the jury found that Mr. Avdalovic did not work from the total number of days worked.  Then, after applying the applicable minimum wage rates to the jury's determination of the number of hours Mr. Avdalovic worked, the Court calculated that Mr. Avdalovic is entitled to wages in the total amount of $66,562.50.  That award consists of $64,317.20 in regular wages and $2,245.30 as spread-of-hours wages.

### c. Senad Perovic

The jury found that plaintiff Perovic received only tips or gratuities and was never paid wages for the hours he worked at the Restaurant.  The jury also found that he never received proper overtime wages or spread-of-hours pay.  (See Verdict Sheet I at 43-44, 46-62).  The jury further found that from January 21, 2009 to December 6, 2014, Mr. Perovic worked 55 hours per week and worked more than 10 hours in a day on four days each week.  (Id. at 46-62).

The verdict sheet directed the jury to determine the number of days Mr. Perovic normally would have worked but did not work due to vacation days, sick days, inclement weather, and other days off.  (See id. at 44).  The jury was instructed not to deduct those days off from their responses regarding the number of hours worked per week because "[t]he Court will account for days off and other time listed in [the jury's] answer[.]"  (Id. at 45).  The jury found that Mr.

Perovic did not work on 3 days in 2009, 3 days in 2010, 3 days in 2011, 18 days in 2012 (including 15 days for Hurricane Sandy), 8 days in 2013, and 3 days in 2014.  (Id. at 44).

To calculate damages based on the jury's verdict, the Court first subtracted the days the jury found that Mr. Perovic did not work from the total number of days worked.  Then, after applying the applicable minimum and overtime wage rates to the jury's determination of the number of hours Mr. Perovic worked and the spread-of-hours rate to the number of days the jury determined Mr. Perovic worked more than ten hours in one day, the Court calculated that Mr. Perovic is entitled to wages in the total amount of $146,268.83.  That award consists of $88,302.75 in regular wages, $49,197.38 in overtime wages, and $8,768.70 in spread-of-hours wages.

d. Richard Reinoso

The jury found that plaintiff Reinoso was never paid wages for the hours he worked at the Restaurant; he received only tips or other gratuities, and he never received proper overtime wages or spread-of-hours pay.  (See Verdict Sheet I at 64-65, 67-77).  The jury further found that from May 10, 2011 to December 6, 2014, Mr. Reinoso worked 54 hours per week and worked more than 10 hours in a day on four days each week.  (Id. at 67-77).

The verdict sheet directed the jury to determine the number of days Mr. Reinoso normally would have worked but did not work due to vacation days, sick days, inclement weather, and other days off.  (See id. at 65).  They were instructed not to deduct those days off from their responses regarding the number of hours worked per week because "[t]he Court will account for days off and other time listed in [the jury's] answer[.]"  (Id. at 66).  The jury found that Mr. Reinoso did not work on 5 days in 2011, 20 days in 2012 (including 15 days for Hurricane Sandy), 5 days in 2013, and 5 days in 2014.  (Id. at 65).

To calculate damages based on the jury's verdict, the Court first subtracted the days the jury found that Mr. Reinoso did not work from the total number of days worked. Then, after applying the applicable minimum and overtime wage rates to the jury's determination of the number of hours Mr. Reinoso worked and the spread-of-hours rate to the number of days the jury determined Mr. Reinoso worked more than ten hours in one day, the Court has calculated that Mr. Reinoso is entitled to wages in the total amount of $87,165.00. That award consists of $53,640.00 in regular wages, $28,161.00 in overtime wages, and $5,364.00 in spread-of-hours wages.

    e. Summary

    The amounts owed to each plaintiff in unpaid minimum wages, overtime, and spread-of-hours compensation is summarized below:

|  | Demirovic | Avdalovic | Perovic | Reinoso |
|---|---|---|---|---|
| Regular Wages | $83,589.75 | $64,317.20 | $88,302.75 | $53,640.00 |
| Overtime Wages | $23,755.50 | $0.00 | $49,197.38 | $28,161.00 |
| Spread of Hours | $7,646.50 | $2,245.30 | $8,768.70 | $5,364.00 |
| **TOTAL** | **$114,991.75** | **$66,562.50** | **$146,268.83** | **$87,165.00** |

4. Wage Theft Prevention Act Claims

    The jury also found that the Restaurant and defendant Ortega had failed to provide plaintiff Reinoso with a proper rate of pay notification and failed to provide all of the plaintiffs with proper wage statements as required by the NYLL.

    Section 195 of the NYLL, enacted as part of the Wage Theft Prevention Act, requires employers to furnish employees with two different notices. See N.Y. Lab. Law § 195; Piedra v. Ecua Rest., Inc., No. 17 CV 3316, 2018 WL 1136039, at *14-15 (E.D.N.Y. Jan. 31, 2018), adopted, 2018 WL 1135652 (Feb. 28, 2018). First, an employer is required to provide written

notice of certain wage information at the time of hiring.  See N.Y. Lab. Law § 195(1)(a).

Second, an employer must furnish each employee with a wage statement containing specified

information each time an employee is paid wages.  See id. § 195(3).

a. Rate of Pay Notifications

Prior to April 9, 2011, Section 195(1) of the NYLL required an employer to "notify his or

her employees, in writing, at the time of hiring of the rate of pay and of the regular pay day

designated by the employer."  N.Y. Lab. Law § 195(1), 2009 N.Y. Laws ch. 270 § 1 (effective

Oct. 26, 2009) (amended by 2010 N.Y. Laws ch. 564 § 3).  For employees eligible to receive

overtime compensation, the notices were required to state both the "regular hourly rate and

overtime rate of pay."  Id.  Despite imposing this statutory duty on employers, the NYLL did not

provide any remedy for employees who did not receive the required notice before April 9, 2011.[7]

Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *18 (E.D.N.Y.

Sept. 22, 2017), adopted by Slip Op. (Oct. 18, 2017).

Effective April 9, 2011, Section 195(1) was amended to add a subsection (a), which

provides that an employer must:

> [P]rovide his or her employees, in writing in English and in the
> language identified by each employee as the primary language of
> such employee, at the time of hiring, and on or before February first
> of each subsequent year of the employee's employment with the
> employer, a notice containing the following information: the rate or

---

[7] For this reason, the three plaintiffs who began working for the Restaurant before April 9, 2011—Kujtim Demirovic, Murto Avdalovic, and Senad Perovic—are not eligible for statutory damages for violations of Section 195(1) and the jury was not asked to answer an interrogatory on this issue with respect to them.  Only Richard Reinoso, who began working for the Restaurant in May 2011, is eligible to recover statutory damages for violations of Section 195(1), and it is only with respect to him that a question on this issue was submitted to the jury.  (See Jury Verdict I at 78).

> rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay.

N.Y. Lab. Law § 195(1)(a), 2010 N.Y. Laws ch. 564 § 3 (effective Apr. 9, 2011) (amended by 2014 N.Y. Laws ch. 537 § 1); see also Martinez v. Alimentos Saludables Corp., 2017 WL 5033650, at *18; Franco v. Jubilee First Ave. Corp., No. 14 CV 7729, 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016). This wage notice provision is enforced through Section 198(1-b).

Section 198(1-b) provides that if an employee is not provided with the wage notice required by Section 195(1)(a) within ten days of his or her date of hire, the employee is entitled to recover statutory damages for the violation. N.Y. Lab. Law § 198(1-b) (effective Feb. 27, 2015). Currently, the statute provides for damages in the amount of $50 per day that the violation occurred or continued to occur, up to a maximum of $5,000. Id. From April 9, 2011 through February 26, 2015, however, Section 198(1-b) provided for statutory damages of $50 per week, up to a maximum of $2,500. See N.Y. Lab. Law § 198(1-b) (effective Apr. 9, 2011). Plaintiffs do not seek retroactive application of the $5,000 maximum. (See, e.g., Pls.' Damages Calculations at 5, Nov. 2, 2017, ECF No. 102). Moreover, this Court has previously held that the amendment should not be given retroactive effect. Martinez v. Alimentos Saludables Corp., 2017 WL 5033650, at *21 n.11.

b. Wage Statements

Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. Law § 195(3). From April 9, 2011 through the end of plaintiffs' employment,[8] an employee could recover $100 for each work week that the employer violated Section 195(3) by failing to provide wage notices, up to a statutory maximum of $2,500.00.  See N.Y. Lab. Law § 198(1-d) (effective April 9, 2011).  The statutory duty, and thus the attendant statutory damages, applies each time the employer pays wages, and an employee's hiring date therefore does not affect entitlement to damages for wage statement violations after the statute's effective date.

The jury found that none of the four plaintiffs were ever provided with wage statements or paystubs containing the information required by Section 195(3) of the New York Labor Law. (See Verdict Sheet I at 22, 42, 63, 67-77).   Based on the number of weeks the jury found each plaintiff to have worked, which far exceeds 50 weeks in each instance, the Court has calculated that each plaintiff is entitled to statutory damages in amount of the $2,500.00, the statutory maximum.  See N.Y. Lab. Law § 198(1-d) (effective April 9, 2011).

The jury also found that Mr. Reinoso was not provided with the written notice containing the information required by Section 195(1) when he was hired.  (See Verdict Sheet I at 78). Since he entered employment after April 9, 2011, Mr. Reinoso is entitled to statutory damages in the amount of $50.00 per work week that the violation continued.  See N.Y. Lab. Law § 198(1-b)

---

[8] From February 27, 2015 onward, an employee could recover $250 for each work day that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00. See N.Y. Lab. Law § 198(1-d) (effective February 27, 2015).

(effective Apr. 9, 2011). Mr. Reinoso worked for more than 50 weeks without being provided the required notice, and therefore he is entitled to statutory damages in the amount of $2,500.00, the maximum amount allowed under the statute in effect at the time. See id. (See also Verdict Sheet I at 67-77).

5. Liquidated Damages – Wage Claims

Under both the FLSA and NYLL, an employee who is not paid his or her minimum wage or overtime compensation is entitled to recover an award of liquidated damages in an amount equal to his unpaid wages, 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was in compliance with the law. See Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260); see also Piedra v. Ecua Rest., Inc., 2018 WL 1136039, at *15; Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 144 (2d Cir. 2013) (holding that "[a]s of November 24, 2009, an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law'").

The first Verdict Sheet asked the jury to answer the following question: "Have the defendants proven by a preponderance of the evidence that they had a good faith basis to believe any underpayment of wages to the plaintiffs during their employment was in compliance with the law?" (Verdict Sheet I at 81). The jury responded "yes." (Id.) The Court is bound by the jury's finding of good faith as to this issue, and therefore plaintiffs are not entitled to an award of liquidated damages on their wage claims.

6. Prejudgment Interest

a. Legal Standard

Plaintiffs are entitled to prejudgment interest on damages awarded for unpaid wages under the NYLL calculated at a rate of 9% per year pursuant to New York law. See N.Y. Lab. Law § 663(1); N.Y. C.P.L.R. § 5004; Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 321-22 (S.D.N.Y. 2014). The Second Circuit has held that, because liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest accrues on any damages for which liquidated damages are not awarded under the FLSA; prejudgment interest may not be awarded under the NYLL in addition to liquidated damages for violations of the FLSA. See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). However, plaintiffs are not entitled to prejudgment interest on amounts awarded under the Wage Theft Prevention Act. See N.Y. Lab. Law §§ 195(1), (3); see also Schalaudek v. Chateau 20th Street LLC, No. 16 CV 11, 2017 WL 729544, at *10-11 (S.D.N.Y. Feb. 24, 2017) adopted in part and modified on unrelated grounds, 2017 WL 1968677 (May 11, 2017) (awarding prejudgment interest only on minimum wages and unlawfully withheld tips); Dominguez v. B S Supermarket, Inc., No. 13 CV 7247, 2015 WL 1439880, at *18–19 (E.D.N.Y. Mar. 27, 2015) (awarding prejudgment interest only on unpaid wages for which plaintiff was compensated under state law and not on damages awarded for defendants' failure to issue written notice of plaintiff's rate of pay in violation of NYLL § 195(3)).

Prejudgment interest under New York Law is governed by Section 5001 of the New York Civil Practice Law and Rules, which provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred

thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  In addition,

"[w]here such damages were incurred at various times, interest shall be computed upon each

item from the date it was incurred or upon all of the damages from a single reasonable

intermediate date."  Id.  Where, as here, violations of the NYLL occur over an extended period,

courts calculate prejudgment interest from a "single reasonable intermediate date."  N.Y.

C.P.L.R. § 5001(b).  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL

2022644, at *9 (S.D.N.Y. May 2, 2011) (observing that "[t]he plaintiffs have calculated

prejudgment interest from the midway point of each plaintiff's employment, which is a

reasonable approach").

     b. Analysis

Plaintiffs Demirovic, Avdalovic, and Perovic accrued damages from January 21, 2009

through their last day of employment, December 6, 2014.  The Court has chosen December 30,

2011, which is midway between the two dates, as the point from which prejudgment interest

should be calculated for them.  Plaintiff Reinoso accrued damages from May 10, 2011 through

December 6, 2014, and the Court has therefore calculated February 21, 2013 as the date from

which prejudgment interest shall be calculated.

To calculate prejudgment interest, the Court first determined the per diem interest rate by

multiplying the statutory rate of 9% per annum by the total damages award for each plaintiff.

The Court then multiplied that per diem rate by the number of days that have passed between the

date selected for the calculation of prejudgment interest and the date of this Order, April 18,

2018.  The Court has thus calculated that plaintiff Demirovic is owed $65,441.33 in prejudgment

interest; plaintiff Avdalovic is owed $37,880.45 in prejudgment interest; plaintiff Perovic is

owed $83,240.99 in prejudgment interest; and plaintiff Reinoso is owed $40,599.79 in prejudgment interest.

## B.  Damages on Jury Verdict in Phase Two—the Retaliation Claims Trial

The second phase of the trial presented the jury with the plaintiffs' claims that the three defendants had retaliated against them for bringing this lawsuit alleging violations of the NYLL and the FLSA.  After hearing the evidence presented during phase two of the trial, the jury found that all three of the defendants had retaliated against all of the plaintiffs, but that the plaintiffs' damages had no specific value.  Thus, the jury awarded nominal damages in the amount of $1.00.

### 1.  Legal Standard

Both the NYLL and the FLSA prohibit retaliation against an employee because he or she has brought a wage claim.  As the Court has previously explained, although federal courts do not agree whether the FLSA's prohibition against retaliation applies only to an employer, it is clear that the New York Labor Law supplies a remedy against "any person," not just an employer. See Demirovic v. Ortega, No. 15 CV 327, 2017 WL 5196240, at *3 n.4 (E.D.N.Y. Nov. 9, 2017), ECF No. 109.  New York law provides that where any person is found to have retaliated against an employee in violation of Section 215(1)(a) of the New York Labor Law, "[t]he court shall award liquidated damages to every employee aggrieved . . . in addition to any other remedies" in "an amount not more than twenty thousand dollars."  N.Y. Lab. Law § 215(2)(a).

### 2.  Analysis

The jury found that all of the defendants, including Rocio Uchofen, retaliated against the plaintiffs by filing and pursuing various baseless counterclaims which were dismissed by the Court before trial, and awarded nominal damages in the amount of $1.00.  (See Retaliation

Verdict Sheet[9] at 1).  In light of the jury's finding, the Court is required to award liquidated damages to each of the plaintiffs.  See N.Y. Lab. Law § 215(2)(a).  Court-awarded liquidated damages are available even where the jury awards no compensatory damages.  See, e.g., Paz v. Piedra, No. 09 CV 3977, 2012 WL 12518495, at *11 (E.D.N.Y. Jan. 12, 2012) (concluding that plaintiffs were entitled to the maximum amount of liquidated damages at the time, $10,000, for retaliation without first establishing entitlement to compensatory damages).

The only cases the Court and the parties have been able to locate that awarded liquidated damages for retaliation arose in the context of default judgments, and therefore provide little insight into the appropriate factors the Court should consider in calculating such an award.  See, e.g., Belizaire v. RAV Investigative & Sec. Servs., 61 F. Supp. 3d 336, 365 (S.D.N.Y. 2014); Paz v. Piedra, 2012 WL 12518495, at *11.

Even in the absence of guidance from other courts, the egregiousness of the defendants' conduct in this case plainly warrants imposition of a significant amount in liquidated damages based in large part on the defendants' attitude and refusal to acknowledge any wrongdoing.  For example, during his testimony, defendant Franklin Ortega conceded that he had acted with malice in asserting counterclaims against the plaintiffs and that he wanted to punish them for bringing the instant lawsuit.  When called to testify by his own counsel, Mr. Ortega did not depart from his earlier testimony that the counterclaims were intended to punish the plaintiffs, but instead only clarified that he did not mean that he acted with malice in the sense of "being evil."  Moreover, defendant Rocio Uchofen testified that she "believe[s] in divine justice," and that she still would have filed the counterclaims against the plaintiffs even if she knew they were

---

[9] Citations to "Retaliation Verdict Sheet" refer to the Verdict Sheet completed by the jury with respect to plaintiffs' retaliation claims in the second trial, dated October 26, 2017, ECF No. 93.

without legal merit.  These are just two examples the Court observed during the course of the trials.

In light of the defendants' testimony and conduct, and considering the prophylactic, punitive, and remedial purposes of liquidated damages under the New York Labor Law, the Court awards each plaintiff $10,000.00 in liquidated damages for retaliation, for a total award of liquidated damages in the amount of $40,000.00.  This award is consistent with the jury's finding that the defendants unlawfully retaliated against the plaintiffs, but that the plaintiffs had not proven their damages with sufficient certainty to receive compensatory damages.  Moreover, this award does not conflict with the jury's decision not to award punitive damages, for the Court explained that such damages were purely a matter of the jury's discretion.  By contrast, court-awarded liquidated damages are mandatory under the statute.  See N.Y. Lab. Law § 215(2)(a).

Thus, the Court awards liquidated damages in the total amount of $40,000.00, which represents an award of $10,000.00 to each individual plaintiff.  Based on the jury's verdict finding that all three defendants were liable for retaliating against the plaintiffs, defendants P.O. Italianissimo Ristorante, Inc., Franklin Ortega, and Rocio Uchofen are jointly and severally liable for this award.

C.  Attorney's Fees and Costs

Plaintiffs seek to recover attorney's fees and costs (see, e.g., Pls.' Mot. for Attorney's Fees and Costs, Nov. 13, 2017, ECF No. 110), pursuant to the applicable provisions of the FLSA and the NYLL.  See, e.g., 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1); Fed. R. Civ. P. 54(d).  In accordance with the requirements established by the Second Circuit, see, e.g., Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted a

Declaration, along with contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney performing the work and a description of the services rendered.  (See Lucas Decl., Nov. 13, 2017, ECF No. 112).  Plaintiffs also request reimbursement for costs incurred in connection with the instant action.  (See id.)

1.  Legal Standard

Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See, e.g., Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008).  Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors.  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

2.  Analysis

Plaintiffs seek $450.00 per hour for 169.1 hours of work by Scott A. Lucas, Esq. and $150 per hour for 33.4 hours of work by Andrew R. Sack, Esq.  (See, e.g., Pls.' Mem. at 14, Nov. 13, 2017, ECF No. 111).

a. Reasonable Hourly Rate

In assessing whether legal fees are reasonable, the Court must determine the "presumptively reasonable fee" for an attorney's services by assessing what a reasonable client would be willing to pay.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 183.  To calculate the presumptively reasonable fee, a court must first

determine a reasonable hourly rate for the legal services performed.  Id.  In Arbor Hill, the

Second Circuit set forth the following factors to guide a court's inquiry into what constitutes a

reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n.3 (citation omitted).  A number of courts within the Second Circuit have applied

these factors when awarding attorney's fees.  See, e.g., Manzo v. Sovereign Motor Cars, Ltd.,

No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of

New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell &

Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation[.]

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see

also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y.

May 8, 2007).  In awarding attorney's fees, the Court also considers each attorney's degree of

skill and the Court's own experience dealing with similar claims.

In this case, the plaintiffs were represented by the Law Offices of Scott A. Lucas. Plaintiffs seek an hourly rate of $450.00 for the work of Scott A. Lucas, Esq., principal at the law firm and a lawyer with 23 years of experience litigating employment law cases. (See Pls.' Mem. at 5). Plaintiffs also seek an hourly rate of $150.00 for the work of Andrew R. Sack, Esq., an associate at the firm. (See id. at 9). Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with FLSA and NYLL cases, the Court finds that the rate of $450.00 per hour for Mr. Lucas's work is at the top end of the rates ordinarily awarded to partners in this district with comparable experience, which generally range from $300 to $450 per hour for partners, and that the rate of $150.00 per hour for Mr. Sack is within the range for junior associates. See, e.g., Saucedo v. On the Spot Audio Corp., No. 16 CV 00451, 2016 WL 8376837, at *18 (E.D.N.Y. Dec. 21, 2016), report and recommendation adopted, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); Cortes v. Warb Corp., No. 14 CV 7562, 2016 WL 1266596, at *6 (E.D.N.Y. Mar. 15, 2016), report and recommendation adopted, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016) (observing that, "[w]ithin this District, the following rates have been endorsed as reasonable: $300.00–$450.00 for partners, $200.00[–]$300.00 for senior associates, and $100.00[–]$200.00 for junior associates").

Given the prevailing rates in this District for partners with significant experience, and having taken into account that the defendants' conduct in this litigation needlessly increased the time required by and the complexity of the case,[10] the Court finds that a reasonable rate for Mr.

---

[10] Among other things, plaintiffs were forced to respond to and engage in discovery regarding the counterclaims, which included civil RICO violations, and ultimately required to engage in extensive motion practice in order to have them dismissed. While the jury awarded only nominal damages for the retaliation claim, the jury was not asked to consider the additional attorney's fees incurred in responding to these claims.

Lucas's work in this case is $450.00 per hour. The Court also finds that the rate of $150.00 per hour is reasonable for Mr. Sack's work in this case.

    b. Reasonable Number of Hours

    The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, a court "should exclude excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)). The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the fees requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal

tasks was excessive and led to duplication of work," and reducing plaintiffs' lawyer's hours by 40%).

Plaintiffs have submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided the services, along with a description of services performed.[11]  (See Lucas Decl., Ex. 4, Nov. 13, 2017, ECF No. 112).  In total, Mr. Lucas billed 253.6 hours and Mr. Sack billed 50.1 hours.  (See id.; Pls.' Mem. at 4-5).  Plaintiffs seek reimbursement for only two thirds of such hours, or 169.1 hours for Mr. Lucas and 33.4 hours for Mr. Sack.  (See Pls.' Mem. at 5).

The Court finds that the voluntary reductions taken by plaintiffs' counsel result in a reasonable number of hours spent litigating this case and appropriately accounts for any duplicative or non-compensable time spent by the respective attorneys.  Multiplying the hourly rate found reasonable by the Court by the number of hours reasonably spent by each attorney results in attorney's fees of $76,095 for time spent by Mr. Lucas and $5,010 for time spent by Mr. Sack.  Thus, the Court awards total attorney's fees in the amount of $81,105.00.

In opposing the motion for attorney's fees, the defendants calculate that 98 hours of Mr. Lucas's time was dedicated to the retaliation claims.[12]  (See 2/26/2018 Behrins Decl. ¶¶ 4-6,

---

[11] The contemporaneous records provided by plaintiffs' counsel in this case are less than ideal and fail to provide the level of detail courts normally require.  Nonetheless, after carefully reviewing each entry, and in light of both the Court's extreme familiarity with this case and the significant voluntary reduction in the number of hours for which plaintiffs seek reimbursement, the Court finds the records to be sufficient under the circumstances.

[12] The defendants seek to have the Court reduce the plaintiffs' attorney's fees by 39% on the mistaken belief that the plaintiffs were not successful on the retaliation claims.  However, as explained supra, the jury found all three defendants liable for retaliation.  (See supra at 18-19; see also Retaliation Verdict Sheet at 2).  The fact that the jury awarded nominal damages under the circumstances of this case is not a basis for reducing counsel's fees on a successful claim.

ECF No. 113). That amounts to approximately 39% of the total time expended on this matter. The Court thus adopts defendants' calculations of the portion of attorney's fees attributable to the retaliation claims. Since Rocio Uchofen was found liable on the retaliation claims only, the Court finds that it is reasonable to hold her jointly and severally liable for 39% of the total fee award of $81,105.00, which is $31,630.95.

The Court therefore awards total attorney's fees in the amount of $81,105.00. Defendants P.O. Italianissimo Ristorante, Inc. and Franklin Ortega shall be jointly and severally liable for that entire amount, and defendant Rocio Uchofen shall be jointly and severally liable for $31,630.95 of the total attorney's fee award.

c. <u>Costs</u>

Plaintiffs have also requested reimbursement for costs in the amount of $1,776.90. (<u>See</u> Pls.' Mem. at 13). Plaintiffs are entitled to recover costs pursuant to the NYLL and the FLSA. <u>See</u> N.Y. Lab. Law § 663(1); 29 U.S.C. § 216(b). The party moving for costs bears the burden of demonstrating the reasonableness of each charge. <u>Piedra v. Ecua Rest., Inc.</u>, 2018 WL 1136039, at *20.

In support of their request, the plaintiffs have submitted an affidavit from their attorney (<u>see</u> Lucas 11/13/2017 Decl.), as well as invoices evidencing that the costs were incurred. (<u>See</u> <u>id.</u> Exs. 5 & 6). The Court takes judicial notice of the filing fee in this District and finds that the remaining costs were reasonably incurred in the course of this litigation. <u>See</u> <u>Piedra v. Ecua Rest., Inc.</u>, 2018 WL 1136039, at *20. The Court therefore awards costs in the amount of $1,776.90.

D. Total Award

In conclusion, the chart below summarizes the damages to be awarded to the plaintiffs, with the Restaurant and Ortega jointly and severally liable for the wage claim amounts; with all three defendants liable for the retaliation claims amounts and costs; and with the Restaurant and Ortega jointly and severally liable for the entire amount of attorney's fees and Rocio Uchofen jointly and severally liable for 39% of the attorney's fee award.

| | WAGE CLAIMS | | | |
|---|---|---|---|---|
| | Demirovic[13] | Avdalovic[14] | Perovic[15] | Reinoso[16] |
| Regular Wages | $83,589.75 | $64,317.20 | $88,302.75 | $53,640.00 |
| Overtime Wages | $23,755.50 | $0.00 | $49,197.38 | $28,161.00 |
| Spread of Hours | $7,646.50 | $2,245.30 | $8,768.70 | $5,364.00 |
| Prejudgment Interest | $65,441.33 | $37,880.45 | $83,240.99 | $40,599.79 |
| Wage Notice | $0.00 | $0.00 | $0.00 | $2,500.00 |
| Wage Statement | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| SUBTOTAL (Wage) | $182,933.08 | $106,942.95 | $232,009.81 | $132,764.79 |

| | RETALIATION CLAIMS | | | |
|---|---|---|---|---|
| | Demirovic | Avdalovic | Perovic | Reinoso |
| Nominal Damages | $0.25 | $0.25 | $0.25 | $0.25 |
| Statutory Damages | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| SUBTOTAL (Retaliation) | $10,000.25 | $10,000.25 | $10,000.25 | $10,000.25 |

| | SUBTOTAL | | | |
|---|---|---|---|---|
| | Demirovic | Avdalovic | Perovic | Reinoso |
| SUBTOTAL (All Claims) | $192,933.33 | $116,943.20 | $242,010.06 | $142,765.04 |
| SUBTOTAL (All plaintiffs) | $694,651.63 | | | |
| | | | | |
| Attorney's Fees | $81,105.00 | | | |
| Costs | $1,776.90 | | | |
| | | | | |
| **TOTAL AWARD** | **$777,533.53** | | | |

---

[13] Exhibit 1 contains the Court's calculations with respect to plaintiff Demirovic.

[14] Exhibit 2 contains the Court's calculations with respect to plaintiff Avdalovic.

[15] Exhibit 3 contains the Court's calculations with respect to plaintiff Perovic.

[16] Exhibit 4 contains the Court's calculations with respect to plaintiff Reinoso.

The Restaurant and Ortega shall be jointly and severally liable for the entire amount of $777,533.53. Defendant Rocio Uchofen shall be jointly and severally liable with the Restaurant and Ortega only for the amount of $73,408.85.

CONCLUSION

For the reasons set forth above, plaintiffs' motion for liquidated damages and plaintiffs' motion for attorney's fees and costs are granted. The Court directs entry of judgment in the total amount of **$777,533.53** in accordance with the foregoing opinion.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      April 24, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York